Ronnie EZELL, Plaintiff,

v.

HAYES OILFIELD CONSTRUCTION
CO., INC., Defendant-Appellee
Cross-Appellant,

v.

UNITED STATES FIDELITY & GUAR-
ANTY CO., Defendant-Appellant
Cross-Appellee.

Nos. 81–3391, 81–3457.

United States Court of Appeals,
Fifth Circuit.

Dec. 13, 1982.

As Amended on Denial of Rehearing
and Rehearing En Banc
Jan. 17, 1983.

Chaffe, McCall, Phillips, Toler & Sarpy, Peter A. Feringa, Jr., Charles L. Chassaignac, J. Dwight LeBlanc, Jr., New Orleans, La., for defendant-appellant cross-appellee.

Bailey & Leininger, B. Ralph Bailey, Robert C. Leininger, Jr., Metairie, La., for defendant-appellee cross-appellant.

Before GOLDBERG, WILLIAMS and GARWOOD, Circuit Judges.

GOLDBERG, Circuit Judge:

This is an appeal from a jury verdict awarding punitive damages to an insured party in a diversity action against its insurer for breach of the insurer's duty to defend the insured. Ronnie Ezell, an employee of Hayes Oilfield Construction, Inc. ("Hayes"), was injured on the job and sued Hayes. United States Fidelity & Guaranty Co. ("USF & G"), Hayes' insurance carrier, notified Hayes that USF & G would not defend the suit. Hayes joined USF & G as a third-party defendant, claiming the costs of Hayes' defense against Ezell's claim and claiming punitive damages for USF & G's failure to defend. The claim by Ezell against Hayes was settled before trial. At trial the jury awarded attorney's fees and punitive damages to Hayes; the punitive damage award was reduced by remittitur. Both USF & G and Hayes appeal from this judgment.

## I. BACKGROUND

### A. Facts

On February 17, 1978, USF & G issued an insurance policy to Hayes which provided in part:

INSURANCE AGREEMENTS

I. Coverage A—Workmen's Compensation

To pay promptly when due all compensation and other benefits required of the Insured by the workmen's compensation law.

Coverage B—Employers' Liability

To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury by accident or disease, including death at any time resulting therefrom:

(a) sustained in the United States of America, its territories or possessions, or Canada by any employee of the Insured arising out of and in the course of his employment by the Insured either in operations in [Mississippi] or in operations necessary or incidental thereto;

\*     \*     \*     \*     \*     \*

II. Defense, Settlement, Supplementary Payments

As respects the insurance afforded by the other terms of this policy the Company shall:

(a) defend any proceeding against the Insured seeking such benefits and any suit against the Insured alleging such inquiry and seeking damages on account thereof, even if such proceeding or suit is groundless, false or fraudulent; but the Company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;

\*     \*     \*     \*     \*     \*

III. Definitions

(a) Workmen's Compensation Law. The unqualified term "workmen's compensation law" means the workmen's compensation law or workers' compensation law and any occupational disease law of [Mississippi], but does not include those provisions of any such law

which provide non-occupational disability benefits.

\*　\*　\*　\*　\*　\*

### EXCLUSIONS

This policy does not apply:

\*　\*　\*　\*　\*　\*

(f) under Coverage B, to any obligation for which the Insured or any carrier as his insurer may be held liable under the workmen's compensation or occupational disease law of [Mississippi], any other workmen's compensation or occupational disease law, any unemployment compensation or disability benefits law, or under any similar law.

Record at I–151.

The application for insurance described Hayes' operations as "Clearing of Roadway & Drilling Site & Reclamation of Land After Operations Completed." Record at I–164.

In April, 1978, Ezell was injured during the course of his employment by Hayes. He initially claimed he injured his back lifting some pipe in Hayes' work yard in Mississippi. Ezell filed a claim for this injury with the Mississippi Workmen's Compensation Commission, and USF & G paid the claim. On June 5, 1978, Ezell filed suit against Hayes and other companies, alleging a different set of facts to support his claims. This second version stated that Ezell hurt his back while working for Hayes on a barge off the Louisiana coast. Ezell claimed he had lied on his Mississippi claim at the urging of Hayes because Hayes wanted to keep its insurance premiums low.

USF & G refused to assume Hayes' defense in this action by Ezell because (1) the geographical limitations of Hayes' policy excluded coverage for accidents outside Mississippi; (2) Hayes had misrepresented the nature of its business in its application for insurance; (3) Hayes and USF & G had

available conflicting defenses. USF & G offered to defend Hayes under a reservation of rights and also agreed to compensate Hayes for its expenses in defending the suit. Hayes was unsatisfied with both of these offers and filed a third-party complaint against USF & G.

### B. Proceedings Below

Ezell filed an action against Hayes and others in United States District Court for the District of Louisiana, on June 5, 1978, alleging a Jones Act claim, 46 U.S.C. § 688 (1976). When USF & G declined to defend Hayes in this original action, Hayes filed a third-party complaint against USF & G seeking a declaratory judgment that Ezell's claim was covered under the insurance policy, and seeking attorney's fees and punitive damages. USF & G filed a motion for summary judgment based on its allegation that Ezell's claim against Hayes was not covered under the policy. Hayes also filed a motion for summary judgment that the claim was covered. The district court ruled that Ezell's Jones Act claim for the accident allegedly occurring in Louisiana was covered by the policy. USF & G does not appeal from this partial summary judgment for Hayes.[1] USF & G still declined to represent Hayes after the partial summary judgment.

Prior to trial, USF & G settled Ezell's original claim and paid him. Thus, at the trial the only remaining issues were the amount of attorney's fees due Hayes and punitive damages. The jury returned a verdict awarding attorney's fees of $2,244.26 more than the $17,611.30 USF & G had already agreed to pay Hayes. The jury also awarded $2 million in punitive damages. This was reduced by remittitur to $500,000 and judgment was entered. Both USF & G and Hayes now appeal from this judgment.

---

1. The district court also certified this partial summary judgment as a final judgment under Fed.R.Civ.P. 54(b). We note in passing that this certification was of dubious validity, because the partial summary judgment certainly did not settle the controversy between Hayes

and USF & G. *See, e.g., Liberty Mutual Insurance Co. v. Wetzel,* 424 U.S. 737, 744, 96 S.Ct. 1202, 1206, 47 L.Ed.2d 435 (1976). This point is of solely academic interest in light of USF & G's failure to appeal this aspect of the judgment below.

## C. Issues on Appeal

USF & G is primarily disturbed by the award of punitive damages. First, USF & G argues that punitive damages are inappropriate because USF & G was justified in its refusal to defend. Next, USF & G contends that punitive damages are unavailable as a remedy for an insurer's failure to defend a claim. Third, USF & G claims that the district court committed several prejudicial errors calling for a new trial, and, finally, that the punitive damages awarded were excessive as a matter of law. Hayes appeals from the remittitur and denial of prejudgment interest.

We agree with USF & G that its refusal to defend was justified and, thus, that punitive damages are unavailable as a matter of law. Accordingly, we do not reach the other issues.

## II. CHOICE OF LAW

■ The court below applied Mississippi law, based on a stipulation of the parties that Mississippi law would apply. On appeal, USF & G argues that Louisiana law should apply, despite the stipulation. Our jurisdiction in this case is based upon diversity, and federal courts sitting in diversity must apply the conflict of laws rules of the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Thus, Louisiana conflict of laws rules apply to the choice of law.[2]

Determining what those conflict of laws rules are and applying them to the facts of this case is a task of great difficulty for federal judges unaccustomed to treading the narrow path of the civil law. Exacerbating the perils of our trek is the fact that the Louisiana courts themselves exhibit uncertainty regarding which choice of law rules they would apply to a case like this one. *Compare U.S. Leasing Corp. v. Keiler,* 290 So.2d 427 (La.App.1979) (apply law of

forum state to determine remedy) *with Wickham v. Prudential Insurance Co.,* 366 So.2d 951, 954 (La.App.1978) (following Restatement (Second) of Conflict of Laws, applying law of state with most contacts to the contractual relationship). *See also Delhomme Industries, Inc. v. Houston Beechcraft, Inc.,* 669 F.2d 1049, 1055–57 (5th Cir. 1982) (federal court attempting to discern Louisiana rules). Fortunately, a path is available to us that enables us to travel around this Louisiana swamp.

■ Happily, it is the case that both Louisiana and Mississippi provide the same law (and lack of law) on the dispositive questions in this case, so we need not attempt to choose between the two. The first dispositive question here is whether punitive damages are available for USF & G's refusal to defend Hayes. Both Mississippi and Louisiana would not allow punitive damages for a reasonable refusal to defend. *See, e.g.,* La. Rev.Stat.Ann. § 22:658 (West 1978); *Eymard v. C & W Well Servicing, Inc.,* 258 So.2d 406 (La.App.), *writ ref'd,* 261 La. 465, 259 So.2d 915 (1972); *Standard Life Insurance Co. v. Veal,* 354 So.2d 239 (Miss.1978); *Mavar Shrimp & Oyster Co. v. United States Fidelity & Guaranty Co.,* 187 So.2d 871 (Miss.1966). Furthermore, our research reveals no law in either state that would guide our inquiry into the second dispositive question: When does a conflict of interest between the insurer and insured justify the insurer's refusal to defend? Accordingly, on that issue we must be guided by general principles of insurance law. Thus, a decision of which state's law a Louisiana court would apply would not assist in the resolution of this case, so we decline to decide that preliminary question.

## III. WAS USF & G'S REFUSAL TO DEFEND JUSTIFIED?

### A. The Duty to Defend

■ One of the major contractual rights secured to Hayes by its insurance policy

---

**2.** Louisiana does allow parties to agree *contractually* to what state's law would be applied to resolution of contractual disputes. *See, e.g., Associated Press v. Toledo Investments, Inc.,* 389 So.2d 752, 754 (La.App.1980); *Davis v. Humble Oil & Ref. Co.,* 283 So.2d 783, 788 (La.App.1973). The pretrial stipulation in this case that Mississippi law would apply, however, is not a contractual provision and is no more binding on us than any pretrial stipulation as to the content of Louisiana law.

with USF & G was that USF & G assumed the responsibility of defending any claim made against Hayes within the coverage of the policy, even if fraudulent or frivolous.[3] *See generally* 7C J. Appleman, *Insurance Law and Practice* (W. Berdal ed. 1979). The primary consideration in evaluating an insurer's duty to defend is whether the pleadings allege a claim within the scope of the coverage of the insurance policy. *See id.* §§ 4682–4686.

Even if the pleadings do state a claim within the policy's coverage, however, the insurer and insured may have conflicting interests in the management of the defense. For example, if the plaintiff urges alternative claims, only one of which would be covered, the insurer might have an interest in arguing that the true state of affairs establishes the claim not covered. This would not be very satisfactory to the insured. If the insurer simply assumes the defense, the insurer has control over the defense, but must provide a defense for the best interests of the insured. *See id.* § 4681. There are various ways of handling this problem, such as the insurer defending under a reservation of rights. *See id.* § 4694. Alternatively, the insured may retain separate counsel.

> The duty to defend is not breached where the insurer refuses to defend because of a conflict of interest. Thus, although the insurer is not required to defend where there is a conflict of interest, it is not relieved from reimbursing the insured for costs in defending the claim alleged to be within the policy.

*Id.* at § 4685.01, at 141 (footnote omitted). Thus, the inquiry regarding duty to defend has at least two steps: (1) is the claim within the policy's coverage; (2) is there a conflict.

### B. The Scope of Coverage

USF & G has at least two lines of defense for its position that it was justified in its refusal to defend. First, it argued that Ezell's Jones Act claim was outside the scope of Hayes' policy. The policy covers liability for events occurring in Mississippi, with coverage for events outside Mississippi only if incidental to operations within Mississippi. Ezell claimed that he was injured while unloading a barge offshore of Louisiana. USF & G moved for summary judgment on the theory that this claim fell outside the geographic limitations of the policy. Hayes also moved for summary judgment that the claim was covered, based on the theory that the Louisiana contract was incidental to work in Mississippi.

The trial judge granted Hayes' motion and denied USF & G's motion.[4] This ruling established coverage, and apparently for the trial judge and Hayes this ruling also established the duty of USF & G to defend Hayes.

### C. The Conflict

USF & G's second line of defense was that a conflict of interest between USF & G and Hayes excused USF & G from assuming the defense—USF & G did not accept the idea that a mere finding of coverage implied it then had a duty to assume the defense of Hayes. USF & G believed that it had a defense available to it that was in conflict with the defenses available to Hayes. Because Hayes refused to allow USF & G to defend under a reservation of rights, USF & G felt it was inappropriate to assume Hayes' defense. If USF & G was correct regarding this conflict, then punitive damages would be improper, so we must now investigate the claimed conflict.

The first key to the conflict is that Ezell's status as a seaman under the Jones Act was very much in doubt. At the time of the accident Ezell was unloading sacks of drilling mud from a barge in a Louisiana waterway. Record at III–183. If Ezell

---

3. The policy provided that USF & G would "defend any proceeding against the Insured seeking such benefits and any suit against the Insured alleging such injury and seeking damages on account thereof, even if such proceed-ing or suit is groundless, false, or fraudulent." Record at I–151 (Insuring Agreement II(a)).

4. As mentioned earlier, USF & G does not now appeal from the finding of coverage.

were not a Jones Act seaman, his status would probably be that of a longshoreman under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950 (1976). Liability under this Act is available without fault, *id.* § 904, and defenses such as negligence of a fellow servant, assumption of risk, and contributory negligence are not available to the employer. *Id.* § 905(a). Furthermore, liability under the Act is exclusive. *Id.* Thus, it would have been unfortunate for Hayes had Ezell been found to be a longshoreman under the Act.

■ The second key to the conflict is that Hayes' policy with USF & G did not cover liability under the Longshoremen's and Harbor Workers' Compensation Act. The policy had two basic types of coverage. Coverage A covered only Mississippi workmen's compensation claims. Coverage B covered claims for injury by accident or disease from operations in Mississippi or elsewhere if necessary or incidental to operations in Mississippi. This is not the end of the story, however, because Exclusion (f) specifically removes any kind of workmen's compensation claim from the scope of Coverage B. *See* Record at I–151. The Longshoremen's claim is not covered under Coverage A and is removed from Coverage B by Exclusion (f). Counsel for Hayes admitted at trial that Hayes had no coverage for a Longshoremen's claim. Record at IV–121. Thus, it would have been fortunate for USF & G if Ezell were found to be a longshoreman, because that liability is exclusive and not covered by USF & G's policy for Hayes.[5]

These two factors clearly show the conflict of interest between USF & G and Hayes. USF & G would have been quite happy to defend on the theory that Ezell was a longshoreman; Hayes would not have liked that strategy. Thus, USF & G could not adequately defend both itself and Hayes in the lawsuit, except under a reser-

vation of rights. Given this conflict, we hold that USF & G's refusal to assume Hayes' defense was reasonable as a matter of law. Because USF & G's actions were reasonable and punitive damages may not be assessed for a reasonable refusal to defend, it was error to allow the issue of punitive damages to go to the jury.[6]

## CONCLUSION

■ The insured's right to have the insurer defend claims made against the insured is a valuable contract right. The right to have the insurer *pay* for the defense is predicated solely on coverage. The trial court here found, on motion for summary judgment, that the claim made against the insured was covered. USF & G does not appeal that finding. Accordingly, USF & G is liable for Hayes' attorney's fees and expenses in defending the claim. USF & G does not seriously contest its obligation in that regard. The right of the insured to have the insurer *assume* the defense, however, further requires that the insurer and the insured have no conflict of interest. Here the insurer and the insured had a conflict: Hayes did not have coverage under the Longshoremen's and Harbor Workers' Compensation Act, making a defense that Ezell, the original plaintiff, was a longshoreman acceptable to USF & G but unacceptable to Hayes. In the presence of such a conflict the insured has only the right to demand that the insurer assume the defense under a reservation of rights. Because Hayes was not willing to do this, USF & G was justified in refusing to assume the defense. Punitive damages are not available for a justifiable refusal to defend.

AFFIRMED IN PART and REVERSED IN PART.

---

5. The fact that Ezell was not pursuing such a claim in the lawsuit is irrelevant. From USF & G's point of view, an excellent defense to Ezell's Jones Act claim would have been to show that Ezell was a longshoreman.

6. This disposition makes it unnecessary for us to reach any of the other arguments by either USF & G or Hayes.