**Philip Joseph TWOHY, Jr.,**
**Plaintiff-Appellant,**

v.

**The FIRST NATIONAL BANK OF**
**CHICAGO, Defendant-Appellee.**

**No. 83–2800.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 6, 1984.

Decided March 29, 1985.

Lawrence M. Karlin, Tatel & Howlett, Chicago, Ill., for plaintiff-appellant.

Joseph B. Lederleitner, Robert Marc Chemers, Pretzel & Stouffer, William B. Davenport, Terry J. Malik, First Chicago, Law Dept., Chicago, Ill., for defendant-appellee.

Before CUMMINGS, Chief Judge, BAUER, Circuit Judge, and DUMBAULD, Senior District Judge.[*]

CUMMINGS, Chief Judge.

Plaintiff Philip Joseph Twohy, Jr. appeals from the district court's grant of defendant's motion for judgment on the pleadings, Fed.R.Civ.P. 12(c), and from the court's denial of plaintiff's motion to amend the court's July 1, 1983, judgment

---

[*] The Honorable Edward Dumbauld, Senior District Judge for the Western District of Pennsylvania, is sitting by designation.

order to allow the filing of an amended complaint. Fed.R.Civ.P. 59(e). Twohy argues that the district court erroneously based its decision to dismiss upon conflicting affidavits of expert witnesses regarding foreign law and that it abused its discretion by refusing to amend the judgment and allow the filing of an amended complaint without a finding that undue prejudice would result to the defendant. For the reasons set forth below, we affirm.

I

Philip Twohy, the majority shareholder and principal of Bevco Baleares, S.A. (hereinafter "Bevco"), a Spanish corporation, brought suit on August 14, 1981, against the defendant, First National Bank of Chicago (hereinafter "First Chicago" or "the Bank"), a national banking association with its principal place of business in Chicago, Illinois. Plaintiff's claims arise out of a series of events involving an alleged loan transaction with the defendant that was to facilitate an expansion of Bevco's business in Spain to Mallorca and the Canary Islands. Bevco had been engaged solely in its business of purchasing and installing beverage-dispensing machines in resorts on the Island of Ibiza, Spain. The gravamen of the complaint is that defendant 1) failed to provide agreed-upon financing (arranged by plaintiff acting as principal) to Bevco, 2) provided "aggressively negative" reports concerning Bevco to another potential lender, and 3) injured plaintiff's business relationship with suppliers and banks by seeking to attach certain Bevco property and by warning hotel owners and managers of liens held on Bevco equipment and supplies (complaint, ¶¶ 6–17). Twohy charged breach of contract and counts of fraud, misrepresentation and libel. The suit originally was filed in the United States District Court for the Northern District of California, but by stipulation of the parties was transferred to the Northern District of Illinois. Jurisdiction rested upon diversity of citizenship; plaintiff ultimately claimed to be a citizen and domicile of Oregon (Exhibit 1 of R. Item 27).

Defendant filed an answer denying all material allegations of the complaint and setting forth the following defenses: 1) plaintiff as a private person and shareholder lacked "standing" to assert a claim for the recovery of damages in contract or tort arising from an alleged transaction of a corporation of which plaintiff was a shareholder, 2) plaintiff did not plead actionable fraud, libel or a corporate contract on which a private plaintiff could rely, or facts supporting a punitive damages claim, and 3) the fraud, misrepresentation and libel claims were time-barred.

First Chicago filed a "Motion for Judgment on the Pleaded Defenses" on April 2, 1982, reiterating the defenses raised in its answer. In support of the motion, the Bank attached the affidavits of Rolf K. Zion, an Assistant Vice-President of First Chicago stationed in Spain, and of James A. Baker, an attorney licensed to practice law in Illinois and Spain and an expert in Spanish law. The Zion affidavit stated that neither Twohy nor Bevco had engaged in any loan transaction with the Bank in Spain (Exhibit A of R. Item 21). The Baker affidavit opined that under Spanish conflict of law rules, Spanish law would govern the action and that under Spanish law "based upon affiant's background and his knowledge of and experience with the law of Spain * * *, a shareholder, such as the plaintiff, has no right to proceed in contract, tort or libel on the alleged contract and alleged transaction of the corporation of which he is a shareholder", or in other words Twohy "has no standing to bring this complaint for the remedies alleged as a matter of law" (¶ 12 of Exhibit B to R. Item 22). The Baker affidavit contains no citations to authority of any kind to support the opinions contained therein.

Plaintiff filed his answer to the motion for judgment on August 20, 1982, and asserted that there was a genuine issue of material fact which precluded the entry of judgment on the pleadings. Two counter-affidavits of Twohy, asserting personal loss from the defendant's actions, were attached in support of the answer along with

copies of various letters between the parties relating to loan transactions. Defendant then filed a reply memorandum and a motion to strike plaintiff's affidavits for failure to respond to issues of law raised by defendant.

The district court initially denied defendant's Fed.R.Civ.P. 12(c) motion by an order dated November 23, 1982, but submitted a motion for a more particularized statement of the fraud and libel allegations. The court concluded that "there remain unresolved issues of fact" in the case. The order offered an example of such a factual question: "[P]laintiff can conceivably prove * * * that he contracted with defendant in his personal capacity to enter into a loan agreement with the company Bevco Baleares." (R. Item 39.)

On December 15, 1982, First Chicago filed a motion for reconsideration of the November 23 denial order pursuant to Fed. R.Civ.P. 59(e). The motion raised no new arguments but took issue with Judge Leighton's claim that unresolved questions of fact remained in the case. As to the court's assertion that plaintiff could prove he personally contracted with defendant, First Chicago responded that plaintiff in his individual capacity only could assert an action for recovery of a broker's or finder's fee (but had not done so) and that plaintiff as a shareholder simply could not recover under Spanish law for injury and damages asserted in the complaint—injury to and harm suffered by the shareholder's corporation (R. Item 42). In support of the motion for reconsideration, defendant filed a supplemental affidavit of Mr. Baker which stated that under Spanish law, Twohy, acting in his individual capacity, could not enter into a contract on behalf of Bevco and that even if Twohy had established an agency relationship with Bevco, any action arising out of the contract would belong solely to the corporation.

Plaintiff responded to the motion for reconsideration by filing the joint counter-affidavits of Antonio de Fortuny y Maynés and Valentín Molins Altarriba, licensed Spanish attorneys. The affidavits discussed issues of jurisdiction, venue, nationality, and citizenship of the parties and asserted that plaintiff Twohy had in fact stated a valid "personal action" ("acción personal") under Spanish law. The affidavits conceded that "between Mr. Twohy and the First National Bank of Chicago there was no contract" and asserted that plaintiff's claims were based on Spanish civil law, Article 1902 of Chapter 2cd, which states: "The person that by action or omission causes damages to another party with fault or negligence, is obliged to repair the damage * * * *" (¶ 23 of R. Item 46). The affidavits also pointed out that under Spanish civil law, Article 1903 of the same Chapter, the acts of representatives of a person, such as directors and employees, may give rise to liability for that person under Article 1902. No authority apart from the statutes was cited in the affidavits to serve as a basis for Twohy's suit.

Defendant filed further supplemental affidavits of Mr. Baker and of Mr. Francisco J. Iglesias, another Spanish law expert, with its reply memorandum in support of the motion to reconsider. The memorandum and affidavits pointed out that the plaintiff's affidavits of Fortuny y Maynés and Molins focused solely on the liability of defendant and failed to address the so-called "standing" issue of whether Twohy was a proper plaintiff to bring the suit. First Chicago also contested the Fortuny y Maynés and Molins discussion of venue, jurisdiction and other matters. (R. Item 55 B.) Finally, plaintiff filed further counter-affidavits of Fortuny y Maynés and Molins and reasserted that Twohy had commenced a valid personal claim under Article 1902 of Spanish civil law (R. Item 60).

The trial court reconsidered its order of November 23, 1982, and on June 3, 1983, granted defendant's motion for judgment on the pleaded defenses. A judgment order was entered on July 1, 1983, in favor of defendant and against plaintiff in which the district court found:

[t]hat the Pleaded Defenses raise only questions of law on this record; that

considering those questions of law in light of the applicable law, the Complaint does not state any claim which the Plaintiff has a right to bring in his personal capacity, nor is he personally entitled to any relief; and that while no questions of fact exist, the result would be no different if the Motion were considered to be one for Summary Judgment.

The court stated that since the "insufficiency of the Complaint [was] one of law, and not of fact," and since Twohy had not tendered an amended complaint, judgment would be entered. (R. Item 67.)

Plaintiff filed a timely motion to amend the judgment to allow the filing of an amended complaint pursuant to Rule 59(e), Fed.R.Civ.P., but did not proffer an amended complaint with the motion. Neither did the plaintiff indicate the exact nature of the amendments proposed (other than that they would be offered "to meet the objections stated by this court to the original complaint") (R. Item 68), nor did he furnish the court with any reason why the amended complaint could not be filed (Plaintiff's Br. 10). On the same day defendant filed objections to the plaintiff's motion, asserting that Twohy's failure to submit the proposed amended pleading within the six weeks following the court's verbal announcement of its ruling was "dilatory" and that there was no good reason to delay the proceeding further (R. Item 69). The trial court entered an order denying the motion to amend on September 19, 1983, and filed a separate memorandum order rejecting the arguments raised by plaintiff in support of his motion (R. Item 72). Plaintiff appeals both the dismissal of the case and the denial of his motion to amend the judgment.

## II

The district court was correct in determining that the substantive law of Spain governed the action and that, as a matter of Spanish law, plaintiff failed to state a claim upon which relief could be granted.

## Choice of Law

■ Since the district court's jurisdiction in this action rests on diversity of citizenship, the substantive law of the forum state, Illinois, controls the case, including the State's choice of law rules. See *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Muller v. Groban*, 346 F.2d 263, 265 (7th Cir.1965). The district court did not specifically utilize the Illinois conflict of law principles to determine which law would govern the substantive issues of the case because the parties had expressly stipulated that the law of Spain would apply. We agree with the district court that the plaintiff did so stipulate, although Twohy later hedged his position. The effectiveness of such a stipulation is a separate issue to be discussed below. See *infra* p. 1190.

■ Judge Leighton in his July 1 Judgment Order found that "all parties agree that the law of Spain controls [the action] * * *." At a June 3, 1983, hearing he stated that "[e]vidently everybody agrees that the law of Spain controls," and asked both parties' counsel, "Is that correct?" Plaintiff's counsel, Ronald Szopa of the firm of Mitchell, Russell & Kelly, replied affirmatively. Furthermore, plaintiff acted at all times consistently with the position taken at the June 3 hearing. Twohy filed counter-affidavits of Spanish law experts pursuant to Fed.R.Civ.P. 44.1, seeking to contradict defendant's memorandum of law and the affidavits of its foreign law experts. Plaintiff also failed to contend at any time prior to judgment that Spanish law was inapplicable or that any other law governed the alleged contract dispute and injury arising out of it.

In plaintiff's motion to amend, Twohy asserted that his counsel's stipulation that Spanish law governed the case was incorrect and inadvertent, that plaintiff intended to bring the action at all times under the laws of the United States and that the attorney making the stipulation was acting only as his local counsel at the time and was unfamiliar with the legal issues of the

case (R. Item 71). Judge Leighton correctly rejected these arguments. The court characterized Twohy's use of the term "local counsel" to describe the law firm of Mitchell, Russell & Kelly as "misleading" and noted both the firm's status as plaintiff's only counsel of record and the absence of any indication that its authority was limited in any way during the early stages of litigation. The court further observed that plaintiff litigated the Spanish law questions raised by defendant and "never so much as suggested that any other law might apply." (R. Item 72; 9/9/83 Order.) Twohy's allegation that his August 20, 1982, affidavit "clearly states that U.S. law controls" (R. Item 71, Reply to Objections to Plaintiff's Motion to Amend Judgment) is simply inaccurate (¶ 2 of Exhibit 1 to R. Item 26).

The effectiveness of a stipulation by the parties as to the law to govern a federal diversity action presents an interesting and novel question, but one which this Court has encountered. In *Lloyd v. Loeffler*, 694 F.2d 489 (7th Cir.1982), we ruled that a reasonable stipulation of the litigants as to choice of law would be honored in tort cases as well as in contract cases. *Lloyd* considered whether the Wisconsin courts would recognize a tort of wrongful interference with a child's custody in the context of a federal diversity action brought in a Wisconsin federal district court. Both parties had stipulated in the district court below that the law of Wisconsin applied to the substantive issues of the case. *Id.* at 495. Plaintiffs, however, urged on appeal that under Wisconsin conflict of laws principles, the law of Maryland should control the "wrongful interference" issue. The Court noted that significant contacts or a significant relationship existed between Maryland and the alleged wrongful conduct. *Id.* Nevertheless, since "reasonable stipulations of choice of law are honored in contract cases," we could see no reason

why "the same principle should not apply in tort cases." *Id.*

Our task is to determine whether the Illinois courts are likely to adopt the *Lloyd* rule in the future. See *Huff v. White Motor Corp.*, 565 F.2d 104, 106 (7th Cir. 1977); 19 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 4507, p. 103 (1982). The reasoning of *Lloyd* applies equally well to the present case despite the fact that Illinois conflict of law principles govern this case, as opposed to those of Wisconsin in *Lloyd*. Illinois law, as well as Wisconsin law, recognizes the enforceability of choice of law clauses in contracts, see *Keller v. Brunswick*, 54 Ill.App.3d 271, 275, 11 Ill. Dec. 873, 369 N.E.2d 327 (4th Dist.1977); *Carter v. Catamore Co.*, 571 F.Supp. 94, 95 (N.D.Ill.1983), and is similarly silent on the issue of the effectiveness of choice of law stipulations by litigants. These choice of law stipulations must be distinguished from the clearly invalid stipulations of parties as to the meaning or scope of the law itself. See, *e.g.*, *Wiegel v. One LaSalle Co.*, 75 Ill.App.2d 272, 221 N.E.2d 117 (1st Dist.1966).

The Fifth Circuit in *Ezell v. Hayes Oilfield Construction Co., Inc.*, 693 F.2d 489 (1982), certiorari denied, —— U.S. ——, 104 S.Ct. 79, 78 L.Ed.2d 90 (1983), decided to take a contrary position on this issue shortly after the *Lloyd* decision, although that court did not discuss our case. *Ezell* refused to extend the rule allowing "parties to agree *contractually* to what state's law would be applied to resolution of contractual disputes" (emphasis in original) to situations involving stipulations of litigants as to choice of law. The court explained "[t]he pretrial stipulation in this case that Mississippi law would apply, however, is not a contractual provision and is no more binding on us than any stipulation as to the content of Louisiana law." [1] 693 F.2d at 492 n. 2. Accord *Consolidated Water P. & P. Co. v. Spartan Aircraft Co.*, 185 F.2d

---

1. The court found, however, that the law of Mississippi and the law of the forum state Louisiana did not differ on the contested issue (the availability of punitive damages as a remedy for an insurer's failure to defend a claim) and ruled, therefore, that it did not need to apply the Louisiana conflict of law principles.

947, 949 (3d. Cir.1950) (in deciding not to apply the Oklahoma law of misrepresentation to which the parties had stipulated below, the Third Circuit stated that "no stipulation made after litigation has begun as to the law which is to determine it has ever been upheld as far as we know, nor do we think it likely to be").

■ Other courts, however, have distinguished between litigants' stipulations as to the content or meaning of a state's law and those as to choice of law. See *Robbins v. Ogden Corp.*, 490 F.Supp. 801, 806 n. 2 (S.D.N.Y.1980) (where parties stipulated that New York law applied to each of the issues raised by motions for summary judgment and where "New York law bears a reasonable relation to the transaction, it will be applied in accordance with the parties' choice"); *Tannerfors v. American Fidelity Fire Insurance Co.*, 397 F.Supp. 141, 144 n. 4 (D.N.J.1975) (where parties throughout litigation of the case urged that the rights and liabilities of the parties be adjudicated under the substantive law of New Jersey and defendant raised conflicts of law principles indicating Florida law should govern the substantive issues for the first time in a post-trial memorandum, it would be improper to relieve defendant of its express stipulation at trial that New Jersey law would govern the issue of defendant's breach of fiduciary duty). We believe that the Illinois courts would adopt the position taken by us in *Lloyd*.

■ Choice of law stipulations that violate public policy, as in the context of contractual choice of law clauses, see, *e.g.*, *Keller*, 54 Ill.App.3d at 275, 11 Ill.Dec. 873, 369 N.E.2d 327, or that call into question the court's subject matter jurisdiction, see *Lloyd*, 694 F.2d at 495 (a court, for example, would lack power to render a decision based on the Code of Hammurabi), of course, fall outside the rule set forth in *Lloyd*. Here, the law of Spain bears a

reasonable relationship to the alleged transaction and injury in question[2] and does not violate public policy nor call into question the court's subject matter jurisdiction.

■ Apart from the absence of any reason to oppose these types of stipulations, we note the underlying current of the *Lloyd* and *Tannerfors* decisions, that to allow a litigant to back away from a position taken steadfastly throughout litigation when it appears that the position will fail or has failed is manifestly unfair and inefficient. Similarly here, it would be a waste of the court's resources and an inequity to allow plaintiff to return to the district court and attempt to show that some other law should govern this action and perhaps escape his stipulation. Consequently, Judge Leighton, in deciding the motion for judgment on the pleaded defenses, properly considered whether plaintiff had stated a valid claim under Spanish law.

### Determination of Spanish Law

The district court correctly determined the substance of Spanish law and held that it required dismissal of plaintiff's complaint. In his decision to dismiss, Judge Leighton focused on an inadequacy of the complaint raised several times by defendant and its foreign law experts. The court ruled that Twohy was not entitled to sue in his individual capacity for injury to a corporation of which he was a shareholder, where plaintiff's sole relation with the corporation was as shareholder and principal. Judge Leighton found that the complaint alleged no injury to Twohy in his individual or personal capacity and, consequently, held that no question of fact was involved in the case and that plaintiff was not entitled to relief.

We concur in the court's characterization of the complaint. The complaint describes

---

**2.** The law of Spain bears a significant relationship to or has significant contacts with the parties and alleged transaction and injury in this suit. The relationship of the parties was centered in Spain, the alleged injury occurred in Spain, and the alleged loan agreement was both negotiated in Spain and intended to be performed in Spain. See *P.S. & E., Inc. v. Selastomer Detroit, Inc.*, 470 F.2d 125 (7th Cir.1972); *Ingersoll v. Klein*, 46 Ill.2d 42, 262 N.E.2d 593 (1970).

a series of events involving the plaintiff, acting as principal of Bevco, and the Madrid branch of the First National Bank of Chicago and certain third parties. Plaintiff alleges injury in contract and tort to the Bevco business arising out of the defendant's alleged failure to provide agreed-upon financing. Although the pleading states that the defendant "destroyed plaintiff's ability to operate and expand his business" and "impaired plaintiff's ability to obtain financing from other banks," it alleges no injury apart from that suffered by the corporation (complaint, ¶ 8). Indeed, in measuring his damages, Twohy describes the requested $1.125 million dollars as representing "profits that Bevco could reasonably have expected to realize had promised financing been provided" (id.).

The only charge that conceivably could be characterized as alleging harm to Twohy personally, apart from his shareholder's interest, is that First Chicago's conduct constituted libel and caused "injury to the business reputation of plaintiff" (complaint, ¶ 21). Twohy alleges that defendant had warned various resort managers and owners of liens held by First Chicago on Bevco equipment and supplies. Yet plaintiff asserted no harm to his ability to conduct business in Spain or elsewhere regarding activities apart from Bevco's business. Rather, Twohy merely claims that defendant's warnings "damaged Bevco's present business" (complaint, ¶ 17), "made resort managers and owners reluctant to use Bevco's equipment and supplies" (id.) and "seriously impaired plaintiff's ability to obtain necessary financing and to remain in business" (complaint, ¶ 21). Furthermore, the alleged actual damages arising out of the libel charge are included in the $1.125 million requested damages figure described by Twohy as representing lost profits to Bevco. The libel count thus is more accurately described as alleging corporate libel. Plaintiff also requested additional damages of one million dollars for each of the libel and fraud/misrepresentation counts, asserting that the alleged libel and fraud were wanton, willful and intentional in nature. The nature of these damages is no different from the actual damages requested in that they relate solely to harm to the corporation.

The question which remains is whether the district court was correct in determining that under Spanish law plaintiff could not maintain an action for injury to a corporation solely on the basis of his status as shareholder of the corporation. Our review under the appropriate standard convinces us that the lower court's determination was correct, although we cannot fully endorse the court's method of reaching its conclusion.

As noted previously, both parties submitted a series of affidavits of foreign law experts concerning issues of Spanish law relevant to the case, including the issue of a shareholder's right to sue. Plaintiff's experts, however, never directly responded to the defendant's challenge to Twohy's individual right to maintain an action. The Fortuny y Maynés and Molins affidavits, stating that an action exists under Spanish civil law providing that "The person that by action or omission causes damages to another party with fault or negligence, is obliged to repair the damage * * * ", merely beg the question, as does the citation to Spanish law providing that acts of representatives of a person may subject that person to liability. See *supra* p. 1188. If we were to apply pre-1966 law, where questions of foreign law were viewed as issues of fact, with the party relying on foreign law carrying the burden of proof, see, *e.g.*, *Vishipco Line v. Chase Manhattan Bank, N.A.*, 660 F.2d 854, 859 (2d Cir.1981), certiorari denied, 459 U.S. 976, 103 S.Ct. 313, 74 L.Ed.2d 291 (1982); 9 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE §§ 2444, 2447 (1971), the lower court's dismissal could be affirmed solely because of plaintiff's failure to carry his burden of proof. The adoption of Fed.R.Civ.P. 44.1 in 1966, however, substantially changed the manner in which federal courts are to treat questions of foreign law. The Rule states:

A party who intends to raise an issue concerning the law of a foreign country shall give reasonable notice in his plead-

ings or other reasonable written notice. The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination shall be treated as a ruling on a question of law.

 In determining these questions of law, both trial and appellate courts are urged to research and analyze foreign law independently. See *United States v. First National Bank of Chicago*, 699 F.2d 341, 344 (7th Cir.1983); *Kalmich v. Bruno*, 553 F.2d 549, 552 (7th Cir.), certiorari denied, 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977). *First National Bank* makes it clear that a district court's determination concerning the law of a foreign country, as a ruling of law and not of fact, is "freely reviewable" and that our scrutiny is not "limited by the 'clearly erroneous' test." 699 F.2d at 344 (quoting 9 C. WRIGHT & A. MILLER, *supra*, § 2446, p. 415).

 Distinguished commentators' have noted the benefits, and at times necessity, of independent research and analysis by courts on questions of foreign law:

> All too often counsel will do an inadequate job of researching and presenting foreign law or will attempt to prove it in such a partisan fashion that the court is obliged to go beyond their offerings. * * * [I]t must be remembered that one of the policies inherent in Rule 44.1 is that whenever possible issues of foreign law should be resolved on their merits and on the basis of a full evaluation of the available materials. To effectuate this policy, the court is obliged to take an active role in the process of ascertaining foreign law.

9 C. WRIGHT & A. MILLER, *supra*, at § 2444, p. 408. The inadequacy in research referred to above unfortunately is present in the instant case. Defendant's experts, attorneys practicing in Spain, opined from their personal knowledge that plaintiff's action is barred under Spanish law because, as is the rule in common law, shareholders of Spanish corporations may not sue for

third party harms to the corporation in which they hold stock. Something more concrete might have been expected of defendant, and plaintiff has been quick to point out the lack of discussion of substantive law within and the conclusory nature of defendant's affidavits. Plaintiff's experts have fared no better in this matter, however, in view of their above-noted failure even to address the issue. Nor are we convinced that the district court fully met its duty to ascertain foreign law under Rule 44.1, although we recognize that investigating Spanish law on the relevant issue presents no simple task. Nothing in Rule 44.1 strictly requires a district judge to engage in private research. 5 MOORE'S FEDERAL PRACTICE ¶ 44.1.04, p. 1657 (1984). Under these circumstances, however, it would have been appropriate for the court to demand a more "complete presentation by counsel" on the issue, as is suggested in the Advisory Committee's Note to Rule 44.1. See *id.* at ¶ 44.1.04 n. 3.

The lower court's investigation of foreign law appears to have been limited to the district judge's understanding that Spanish law did not differ from the law of Illinois on the question of a shareholder's right to sue for a third party breach of a corporate contract:

> And it is amazing when you look at it, how similar are the laws of the various countries—that is the civilized countries—of the world.
>
> \* \* \* \* \* \*
>
> * * * It is fundamental. The law of Spain, the civil law, the common law— one person cannot sue for injury to another person.

(6/3/83 Transcript of Proceedings, pp. 9, 11 of R. Item 66). The court was correct in not dismissing plaintiff's claim merely because Twohy had failed to establish relevant controlling Spanish law since:

> The rare case in which there is a failure of proof * * * [of foreign law] would be an especially unappealing case for holding that the party whose claim or defense is based on foreign law must lose

because this would be a case in which the foreign law could not be ascertained despite the diligent efforts of both counsel and the trial judge. It simply is not fair to bar a party from recovering when neither his attorney nor the court is able to conjure up the content of governing law.

9 C. WRIGHT & A. MILLER, *supra*, at § 2447, p. 416. Under the circumstances, if the district court had decided not to request a more detailed presentation by counsel, before plaintiff's complaint properly could be dismissed, Rule 44.1 required a deeper inquiry into the law of Spain than that undertaken by the court below. Nevertheless, we are convinced that Spanish law does not permit plaintiff Twohy's action against First Chicago.

 Under general principles of United States corporate law, as well as under Illinois law, a stockholder of a corporation has no personal or individual right of action against third persons for damages that result indirectly to the stockholder because of an injury to the corporation. 12B W. FLETCHER, CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 5911 (rev. perm. ed. 1984); *Poliquin v. Sapp*, 72 Ill.App.3d 477, 480, 28 Ill.Dec. 615, 390 N.E.2d 974 (4th Dist.1979). Certain "often overlapping" exceptions to the general rule have been recognized such as where a special contractual duty exists between the wrongdoer and shareholder or where the shareholder suffers an injury separate and distinct from that suffered by other shareholders. 12B W. FLETCHER, *supra*, at § 5911. See *Buschmann v. Professional Men's Association*, 405 F.2d 659 (7th Cir.1969); *Zokoych v. Spalding*, 36 Ill.App.3d 654, 344 N.E.2d 805 (1st Dist.1976). The parties' briefs vigorously debate whether under Illinois law plaintiff's action would fall within any of the exceptions to the general rule. Our inquiry, however, must focus on whether, as defendant's experts suggest, the law of Spain utilizes the same general rule regarding stockholder actions and whether similar or broader exceptions to the rule exist under Spanish law.

Comparative law studies of shareholder rights and shareholder suits indicate that the American rule barring shareholder damages actions arising out of corporate transactions with third parties has universal application among Western nations:

> A company is an independent legal person. It is therefore, natural that it should have the sole power to take legal action to remedy an infringement of its rights. Under the usual distribution of powers between the various organs of a company, the administration of its affairs, which includes the power to commence a lawsuit, is vested in the board of directors. The board is generally given full discretion in deciding whether or not to bring an action in the company's name, the shareholders normally having no right to interfere.

A. Barak, *A Comparative Look at Protection of the Shareholder's Interest: Variations on the Derivative Suit*, 20 INT'L. & COMP. L.Q. 22 (1971). A major comparative law treatise describes the "non-interference rule" as follows:

> The shareholder normally can only sue for damages other than that incurred by him because of the fact that the corporation has been hurt. The decrease in value in his shares is normally no[t a] sufficient basis for an individual cause of action.

XIII INTERNATIONAL ENCYCLOPEDIA OF COMPARATIVE LAW—BUSINESS AND PRIVATE ORGANIZATIONS 4–256 (A. Conard ed. 1973). Spain is not cited as an exception to this general rule in either of the above works. The law of the United States is singled out as allowing the most significant encroachment upon the general "non-interference rule." *Id.* at 4–330. The Spanish system of civil law, in contrast, appears to follow the "non-interference rule" quite strictly.

The Spanish corporation, or "sociedad anónima" (S.A.) (more correctly referred to in English as a "joint stock company"), is "similar in all major respects to a United States corporation." PRICE WATERHOUSE, DOING BUSINESS IN SPAIN 31 (1980). See ARTHUR ANDERSEN & CO., TAX AND TRADE

GUIDE—SPAIN 36–37 (2d ed. 1972). Translations of the Spanish Code of Commerce and the Law for Joint Stock Companies of July 17, 1951 (the basic law governing Spanish joint stock companies), confirm this point and indicate that shareholders in a joint stock company enjoy very limited rights regarding management of the company. Article 116, Section One, Title One, Book Two of the Code of Commerce provides that each commercial company (including a sociedad anónima) "will have juridical personality in all its acts and contracts." 20 COMMERCIAL LAWS OF THE WORLD, COMMERCIAL LAWS OF SPAIN 31 (1970).[3] Article 39 of the Law for Joint Stock Companies of July 17, 1951, enumerates the rights of shareholders: the sharing in the profits and capital on liquidation, the right of preference in subscribing to new issues of stock of their corporation, the right of voting at stockholders' meetings, summoning a general stockholders' meeting under certain circumstances, challenging resolutions of the stockholders when their actions are contrary to law or damaging to the interests of the corporation's stockholders or to the corporation, leaving the company when the latter effects a change in its corporate purposes, and the right to hold directors liable for their actions. 20 COMMERCIAL LAWS OF SPAIN, *supra,* at 43–44. No right to sue third parties on the basis of corporate contracts or corporate transactions appears among these rights.

Another treatise reveals, however, that under the Law of July 17, 1951, a stockholder of a joint stock company enjoys "standing to sue in place of the real party in interest" with respect to certain corporate contracts. Miguel y Alonso, *Access to Justice in Spanish Law* in I ACCESS TO JUSTICE, A WORLD SURVEY (Book 2) 880 (M. Cappelletti & B. Garth eds. 1978). The

exceptions allow "[c]ertain persons or entities who would not have had standing to bring an action * * * the right to do so because they are considered affected by the outcome of the dispute." *Id.* The first exception allows a stockholder or administrator of a corporation to challenge illegal and void corporate agreements. The second exception, more akin to an American stockholder's derivative suit, allows a stockholder's action to invalidate corporate agreements that violate the articles of incorporation or those which impair the interests of the company to the benefit of one or more stockholders. *Id.*

Plaintiff's suit does not fall within either of these two exceptions to the non-interference rule. More importantly, the treatise's description of these special standing situations as departures from the normal rule strongly indicates that Spanish law does not recognize a suit of the type plaintiff brought before the district court. Plaintiff failed to state a cognizable claim under Spanish law.[4]

### III

Finally, we rule that the district court's refusal to allow the filing of a post-judgment amended complaint was proper in view of the plaintiff's failure, without explanation, to file an amended complaint and failure to indicate the nature of the proposed amendments at any time during the proceedings below. Plaintiff argues that a federal trial court only may deny leave to amend a complaint where allowing an amendment would unduly prejudice the defendant. The principal weakness of Twohy's position is that it fails to distinguish the standards governing post-judgment and pre-judgment amendments.

---

**3.** All references to Spanish law are consistent with the law of Spain as of 1981.

**4.** Judge Leighton originally ruled that judgment on the pleadings pursuant to Rule 12(c), Fed.R. Civ.P., would be improper because unresolved questions of fact remained in the case, such as the possibility of a contract to enter an agreement with Bevco between plaintiff acting in his personal capacity and defendant. See *supra* p.

1188. The court correctly reversed its earlier decision because, as defendant pointed out (¶ 3 of R. Item 42), even if a contract existed between Twohy individually and defendant, no relief on the complaint would be possible since it alleged no injury to Twohy apart from indirect injury as a shareholder resulting from harm to Bevco.

On July 1, 1983, the district court entered judgment on defendant's motion for judgment on the pleaded defenses, having granted said motion after a June 3, 1983, hearing involving both parties. Judge Leighton entered judgment on the dismissal of the complaint because the insufficiency was one of law and because plaintiff had not tendered an amended complaint. This Circuit has clarified recently that once a district court enters judgment upon a dismissal (as opposed to a mere dismissal of the complaint), the plaintiff may amend the complaint under Rule 15(a), Fed.R.Civ.P., solely with "leave of court" after a motion under Rule 59(e) or 60(b), Fed.R.Civ.P., has been made and the judgment has been set aside or vacated. *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1111 (7th Cir.1984), certiorari denied, — U.S. —, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985). The right under Rule 15(a) to amend "once as a matter of course" is lost after the entry of judgment. *Id.*

■ Even after entry of judgment on dismissal, however, assuming the requirements of Rule 59(e) or 60(b) have been fulfilled, the liberal standard of Rule 15(a) still controls and "leave [to amend] shall be freely given when justice so requires." See *Union Planters National Leasing, Inc. v. Woods*, 687 F.2d 117 (5th Cir.1982); *Saalfrank v. O'Daniel*, 533 F.2d 325 (6th Cir.1976), certiorari denied, 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (1976); *Royal Indem. Co. v. Olmstead*, 193 F.2d 451 (9th Cir.1951); *Rhodes v. Van Steenberg*, 225 F.Supp. 113 (D.Neb.1963), affirmed on other grounds *sub nom.* 334 F.2d 709 (8th Cir.), certiorari denied, 379 U.S. 915, 85 S.Ct. 263, 13 L.Ed.2d 186 (1964); *United States v. New York*, 82 F.R.D. 2 (N.D.N.Y. 1978); 6 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1488, p. 437 (1971). The decision to allow an amendment after dismissal, however, lies within the sound discretion of the trial court, 3 Moore's Federal Practice ¶ 15.10 (1984), and this Court has held specifically that review of a district court's decision not to permit an amendment after entry of judgment is reviewable only under the "abuse of discretion" standard. *United States Labor Party v. Oremus*, 619 F.2d 683, 690 (7th Cir.1980). See *Verhein v. South Bend Lathe, Inc.*, 598 F.2d 1061, 1063 (7th Cir.1979) (*per curiam*). Although Twohy cites various cases stating the rule that delay alone is an insufficient reason to deny leave to amend, see, *e.g.*, *A. Cherney Disposal Co. v. Chicago & Sub. Refuse Disposal Corp.*, 68 F.R.D. 383 (N.D.Ill.1975), and that undue prejudice to defendant resulting from plaintiff's delay is a prerequisite to denying leave to amend, see *Hess v. Gray*, 85 F.R.D. 15 (N.D.Ill. 1979), all of plaintiff's authority involves pre-judgment motions to amend. Precisely what "justice so requires" under Rule 15(a), after entry of judgment, as opposed to before, is unclear.

Several courts have recognized that justice may require something less in post-judgment situations than in pre-judgment situations under Rule 15(a), and have denied post-judgment leave to amend solely on the basis of unreasonable or unexplained delay where plaintiff had earlier opportunities to present amendments. We explained in *Oremus* that "[d]elay in presenting a post-judgment amendment when the moving party had an opportunity to present the amendment earlier is a valid reason for a district court not to permit an amendment." 619 F.2d at 690. See *Union Planters National Leasing, Inc. v. Woods*, 687 F.2d at 121; *Ondis v. Barrows*, 538 F.2d 904, 909 (1st Cir.1976); *Jackson v. American Bar Ass'n*, 538 F.2d 829, 833 (9th Cir.1976); *Freeman v. Continental Gin Co.*, 381 F.2d 459, 469 (5th Cir.1967); *Landon v. Northern Natural Gas Co.*, 338 F.2d 17, 20 (10th Cir.1964), certiorari denied, 381 U.S. 914, 85 S.Ct. 1529, 14 L.Ed.2d 435 (1965).

In *Oremus* the district court, as here, had dismissed plaintiffs' complaint, entered judgment on the dismissal and denied plaintiffs' subsequent motion to alter, amend or vacate the judgment and to grant leave to amend the complaint. Unlike the present case, the plaintiffs in *Oremus* indicated to the appellate court the precise amendments

they wished to add to their complaint. We affirmed the lower court's action with regard to one proposed amendment solely because plaintiffs had offered "no explanation for the delay in raising the new issue prior to the entry of judgment."[5] 619 F.2d at 692.

Plaintiff Twohy's intransigence in presenting his amendment was peculiarly unreasonable and inexplicable and is indistinguishable from the facts of *Oremus.* We, therefore, can in no way characterize Judge Leighton's refusal to allow amendment as an abuse of discretion. Over twenty-two months elapsed from the time this suit was commenced to the time the court entered judgment for the defendant—time in which Twohy could have presented his amendments. Twohy also failed to tender an amended complaint or request leave to amend during the nearly one-month period between Judge Leighton's June 3, 1983, announcement of his decision to grant defendant's motion to dismiss and the judge's ultimate entry of judgment on July 1. More significantly, plaintiff failed to file an amended complaint with his July 15 Rule 59(e) motion to amend the judgment order and request for leave to file an amended complaint. Indeed, plaintiff never tendered an amended complaint to the district court, this despite First Chicago's express arguments in its

"Objections to Plaintiff's Motion to Amend" (also filed on July 15) that such a presentation was necessary. In his reply to defendant's objection, Twohy merely disputed whether the filing of an amended complaint with a motion seeking leave to amend was in fact the appropriate procedure (¶ 8 of R. Item 71). Contrary to plaintiff's understanding, the normal procedure is for the proposed amendment or new pleading to be submitted with the Rule 15(a) motion. 3 MOORE'S FEDERAL PRACTICE ¶ 15.12 (1984). While we do not seek to require that an amended complaint always be tendered with a Rule 15(a) motion to amend, such a failure certainly indicates a lack of diligence and good faith,[6] particularly under these circumstances. Plaintiff's failure to explain why an amended complaint could not be filed with his motion, or filed at any other time, and his failure to indicate to the court the contents of the proposed amendment[7] reinforce our conclusion that the delay caused by plaintiff was unreasonable and that justice did not require that Twohy be granted leave to amend. The judgment of the district court is AFFIRMED.

---

**5.** The lower court's refusal in *Oremus* to allow another amendment was affirmed because the proposed amendment would have had no effect on the outcome of the case. 619 F.2d at 692.

Our scrutiny of the district court's action would be no more strict if we were to treat the district court's original decision as a grant of summary judgment (as suggested by Twohy) rather than as a grant of judgment on the pleaded defenses. See, e.g., *Freeman,* 381 F.2d 459 (denial of leave to vacate summary judgment and amend).

**6.** It is interesting to note that under Illinois law (construing the Illinois Civil Practice Act), it is not an abuse of discretion for a judge to refuse to allow an amendment where the amendment has not been presented to the court. See *Botti v. Avenue Bank & Trust Co. of Oak Park,* 103 Ill.App.3d 1052, 59 Ill.Dec. 711, 432 N.E.2d 295 (2d Dist.1982); *Intini v. Schwartz,* 78 Ill.App.3d 575, 33 Ill.Dec. 751, 397 N.E.2d 84 (1st Dist. 1979). The cases reason that before a judge can be charged with an abuse of discretion, the

record must disclose reasons or facts presented to the judge which require a favorable exercise of the court's discretion. *Intini,* 78 Ill.App.3d at 579, 33 Ill.Dec. 751, 397 N.E.2d 84.

**7.** The only specific point raised in Twohy's motion to amend was that plaintiff's stipulation allowing the law of Spain to govern the case was entered inadvertently. As noted earlier, *supra* p. 1189, the district court was correct in holding Twohy to his stipulation. The motion did not indicate in any way the manner in which plaintiff intended to respond to the inadequacies set forth in the July dismissal order.

The reason plaintiff has steadfastly refused to amend the complaint to add the Spanish corporation as a party plaintiff is not clear from the record. Judge Leighton surmised below that such an amendment would face a number of obstacles including statute of limitations problems (6/3/83 Transcript, p. 12 of R. Item 66).