(No. 25321.—)
HARRY ROTH *et al.* Appellees, *vs.* HARRY AHRENSFELD *et al.*
—(THE W. A. JONES FOUNDRY AND MACHINE COMPANY, Appellant.)

*Opinion filed April 10, 1940—Rehearing denied June 5, 1940.*

GEORGE A. BOSOMBURG, (WARREN H. ORR, JOSEPH H. MUELLER, and WALLACE W. ORR, of counsel,) for appellant.

ERNEST W. CLARK, and EDELSON & PAULLIN, (SIDNEY W. MANDEL, and ALBERT LANGELUTTIG, of counsel,) for appellees.

Mr. CHIEF JUSTICE WILSON delivered the opinion of the court:

Three creditors of the Crawford State Savings Bank, on February 3, 1931, filed their complaint in the superior court of Cook county, on behalf of themselves and all other creditors of the bank, to enforce the liability of the bank's stockholders under section 6 of article 11 of our constitution. The W. A. Jones Foundry and Machine Company, the only defendant whose liability is here in question, was served with summons on January 12, 1932, filed its appearance on January 14, 1932, and later answered. The master in chancery, to whom the cause was referred, after a special hearing, recommended a decree in favor of the plaintiffs in the sum of $10,000. The decree of the circuit court, entered May 19, 1938, sustained the objections of the defendant to this report and dismissed the complaint as to it for the want of equity. Upon appeal, the Appellate Court for the First District reversed the decree and remanded the cause, with directions to enter a decree in accordance with the master's report. The defendant's petition for leave to appeal has been granted and the record is before us for a further review.

The sole question for consideration on this appeal is whether the defendant corporation is liable as a stockholder

of the Crawford State Savings Bank upon stock standing in its name when the bank was closed by the Auditor of Public Accounts.

The following facts are disclosed by a stipulation of counsel, made at the close of the hearing, and the evidence adduced before the master. Warren G. Jones, the president, general manager and a director of the defendant corporation owned 19,489 of its 20,000 shares of common stock and 7 of its 3,000 shares of preferred stock. Except for 200 shares of common and 81 shares of preferred stock, the balance of defendant's 23,000 shares was owned by persons related to Jones. Defendant was substantially a family corporation and Jones was generally referred to as "the boss" and operated it very much "as he pleased." Jones also owned 172 shares of stock, was a director and fairly familiar with the financial condition of the Crawford State Savings Bank. On December 31, 1930, apparently without consulting any other officer or stockholder, he transferred 100 shares of his bank stock to the defendant corporation, receipt for these shares being signed on the bank's records by one of defendant's employees. At Jones' direction the defendant's bookkeeper credited him with $20,000, based on a valuation of $200 per share, and showed the acquisition of the shares on the books of the company, where the entries remained unchanged until August 31, 1932. On January 15, 1931, the bank was closed by the Auditor of Public Accounts. During this period of two weeks, it is agreed, liabilities in the amount of $276,289.49 accrued in favor of the bank's creditors and remained unsatisfied at its closing. No action was taken by the board of directors with reference to the transaction in question from the date of the transfer on December 31, 1930, until July 1, 1932, at which later date the directors passed a resolution attempting to repudiate the sale. During the intervening period, however, the records of the corporation disclosed that the sale had been effected in December, 1930. The journal

book of the defendant contains an entry as of December 31, 1930, charging the "stocks and bonds" account and crediting "Warren G. Jones, accounts receivable" with $20,000, explained by extension as being for "100 shares of Crawford Bank stock taken from W.G.J. at $200 per share and credited to W.G.J. per his order." Under the classification of stocks and bonds, the total value of which was only $40,350, defendant's balance sheet as of December 31, 1930, appended to its Federal income tax report for that year, included the disputed 100 shares of bank stock. The 1931 audit report further disclosed a liability in the sum of $15,000 set up against the acquisition of the bank's stock. The corporate journal contains an entry on June 30, 1932, charging the ledger account of "earned surplus" and crediting the "reserve for Crawford bank items," which is explained in an extension as being "to set up reserve against Crawford bank items except for the 20% dividend on deposit accounts." The dividend referred to was allowed by order of the circuit court of Cook county, entered July 8, 1932, in a separate proceeding for liquidation of the bank, and was based upon defendant's claim, filed on February 26, 1932, for unpaid deposits in the bank. This order directed payment of the dividend "without prejudice to the question as to the proper ownership of a certain certificate of 100 shares of common stock of the Crawford State Savings Bank that appears to have been issued to W. A. Jones Foundry and Machine Company on, to-wit, the 31st day of December, 1930 A.D." On July 1, 1932, the board of directors of defendant, including Warren G. Jones, unanimously passed a resolution which, reciting that the questioned transfer had been made without the knowledge, authority or approval of the board, had not been ratified by the directors and was outside the scope of the corporation's powers, repudiated it, and rescinded the credit reference in favor of Jones. This resolution is reflected in a journal entry made on August 31, 1932.

In support of its argument for a reversal of the judg·ment of the Appellate Court the defendant asserts that the interest of Jones was adverse and the sale unfair to it and, accordingly, contends that the transfer was void, that no contract existed as a basis for the constitutional liability of a stockholder, and that because the directors knew nothing about the transfer until immediately preceding the passage of the rescinding resolution, its delay in repudiation cannot be construed as acquiescence or ratification. Plaintiffs, on the other hand, argue that the transaction was merely voidable and could not have been avoided by the resolution of July 1, 1932, because the rights of innocent third persons had intervened, and also because the delay of the defendant amounted to assent. On the question of acquiescence, plaintiffs urge that defendant's officers and stockholders are conclusively presumed to have had notice of the corporate records and, further, that their denial of actual notice is unworthy of credence.

Determination of the question of defendant's liability rests in the final analysis on whether defendant's directors or stockholders, other than Jones, had full knowledge of the disputed sale during the year and one-half it remained unchallenged on defendant's records. Even though the defendant originally could have avoided the sale, it has lost that privilege if it later acquiesced in the transaction. (*Golden* v. *Cervenka*, 278 Ill. 409.) Defendant does not deny that its delay in disaffirming should be interpreted as approval, except by its contention that the other officers and stockholders had no knowledge of Jones' transaction during the intervening period. A president is not disqualified from dealing with the corporation he represents, though his contracts with the corporation may be disaffirmed and will be set aside if tainted with the slightest unfairness. (*Dixmoor Golf Club* v. *Evans*, 325 Ill. 612.) If there is any delay in repudiating, the court will inquire whether avoidance will cause an injustice to any one. (*Higgins* v.

*Lansingh,* 154 Ill. 301.) Although no rights of third persons would be prejudiced, such a contract, nevertheless, will be upheld if by affirmative ratification or by actions amounting to acquiescence the corporation has adopted it. (*Louisville, New Albany and Chicago Railway Co.* v. *Carson,* 151 Ill. 444.) When the corporation, through its disinterested officers or stockholders, has been completely informed of the contract over a long period of time and has not indicated its disapproval in any way, it may be concluded that the president's action has been adopted. (*Ashley Wire Co.* v. *Illinois Steel Co.* 164 Ill. 149; *Beach* v. *Miller,* 130 id. 162.) Acquiescence thus inferred binds the corporation, preventing later disaffirmance. (*Louisville, New Albany and Chicago Railway Co.* v. *Carson, supra.*) The knowledge of the corporation may be determined from pertinent testimony of the officers or stockholders, or, if the corporate records contain a full disclosure and were available to the other stockholders and directors during the period in question, it will be presumed. *Dixmoor Golf Club* v. *Evans, supra; Nat. Hollow Brake-Beam Co.* v. *Chicago Railway Equipment Co.* 226 Ill. 28; *Ashley Wire Co.* v. *Illinois Steel Co. supra.*

The record contains no evidence that Jones ever attempted to hide or becloud the sale of his bank stock to defendant. The transaction was openly recorded and fully disclosed in its journal, ledger books, and in its annual reports, showing not only that Crawford State Bank stock was involved but that Jones was the seller. These records were available to everyone at the corporate meetings and whenever desired for examination by the officers and stockholders. They conclusively bind the defendant with notice of the transaction.

If the defendant's records were not to be taken as conclusive, however, the testimony of the other stockholders and directors in defendant's behalf clearly reveal knowledge of the transaction as early as January, 1932. That these

witnesses, who admitted their inability to clearly recall when the information was first received, had learned of it previously, or that others not testifying had earlier acquaintance with it, is also possible. One director, William T. Coleman, admitted knowing of the sale in January, 1932, and stated, "When I heard about it I didn't do anything about it." Another, F. H. Hoge, said he learned of it in the same month, discussed it with someone not named, and took no action. William A. Jones was not quite certain if his knowledge dates from the first part or the middle of 1932. John A. Sizer could not recall when he had heard of it. A preferred stockholder, Jesse W. Beeman, testified first that he heard of the bank stock sale in February, 1932, and then placed his knowledge as just prior to April or May of that year. He originally discovered its existence while investigating another matter on which he filed suit in April or May, 1932, but did not then dispute the present transaction. The one attorney then representing defendant, testified he had been a director for a certain length of time. He failed to state when he first learned of this sale, but it is apparent that he, as well as the others, knew about it when defendant's initial appearance was filed in this proceeding in January, 1932, and during the subsequent pleadings in this and, also, the liquidation proceeding. By the records of defendant and the testimony of its witnesses we are impelled, as were the master in chancery and the Appellate Court, to believe the only reasonable conclusion is that defendant knew of, and tacitly acquiesced in this sale for many months preceding its tardily ineffective effort of July 1, 1932, to repudiate it by a unanimous resolution of its directors, including Jones.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*