No. 2--01--0016 

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

PHILLIP GOLDBERG and CYNTHIA ) Appeal from the Circuit Court

MATTIA-GOLDBERG, on Behalf of ) of Lake County. 

Themselves and the GLENSTONE )

HOMEOWNERS ASSOCIATION, )

)

Plaintiffs-Appellants, )

) 

v. ) No. 99--CH--965

)

HOWARD W. MICHAEL, STANLEY R. ) 

RAZNY, JR., KURT W. LEWIS,   ) 

NAPOLEAN P. TARNARIS, and ) 

MARSHALL N. DICKLER, LTD., ) Honorable

) John R. Goshgarian,

Defendants-Appellees. ) Judge, Presiding.

_________________________________________________________________

Modified Upon Denial of Rehearing

JUSTICE BYRNE delivered the opinion of the court:

Plaintiffs, Phillip Goldberg and Cynthia Mattia-Goldberg, on behalf of themselves and the Glenstone Homeowners Association (Association), appeal from the trial court's judgment granting the motions to dismiss of 
defendant
s, Howard W. Michael, Stanley R. Razny, Jr., Kurt W. Lewis, Napolean P. Tarnaris, and Marshall N. Dickler, Ltd. (Dickler).  We affirm.

The Association consists of several homeowners in Long Grove, including plaintiffs, Phillip Goldberg and Cynthia Mattia-Goldberg.  Michael served on the Association's board from July 1997 through November 1998; Lewis served from October 1996 through December 1997 and was vice president of the board from May 1997 through December 1997; Razny served from October 1996 through November 1998 and was president of the board from May 1997 through December 1997; Tarnaris served on the board from May 1997 through November 1998 and was alleged to have been "
de
 
facto
" counsel for the Association; Dickler served as attorney for the Association from October 1996 through December 1997.  

In July 1996, a parcel of real estate within Glenstone (the Murphy Lot) fell behind in assessment payments, and the board instructed Dickler to file a lien and to commence a foreclosure action against the owner.  The Association filed a complaint to foreclose lien on January 23, 1997, which was verified by plaintiff Phillip Goldberg as treasurer of the board.  The affidavit in support of the judgment was signed by Goldberg on April 17, 1997.  Dickler sent to Goldberg monthly descriptive bills that informed Goldberg of the status of the suit.  On November 14, 1997, at the public auction of the Murphy Lot, some or all of the individual 
defendant
s bid on the Murphy Lot.  Michael was the highest bidder and obtained title to the Murphy Lot.  Goldberg received a descriptive bill on November 18, 1997, four days after the auction, informing him of the sale.

After the foreclosure sale, Goldberg, allegedly on behalf of the Association, commenced an investigation into Michael's purchase of the Murphy Lot and the roles of Lewis, Tarnaris, Razny, and Dickler in the purchase.  On January 26, 1998, the board issued a corporate resolution alleging that Lewis, Michael, Razny, and Tarnaris usurped the Association's corporate opportunity, breached their fiduciary duties to the Association, and committed fraud by failing to inform the Association of the foreclosure action and by  planning to obtain the Murphy Lot for themselves.  On October 18, 1998, the board authorized outside counsel to conduct all appropriate negotiations with those against whom the board might have causes of action and to determine if any such causes of action could be resolved without recourse to litigation.  

On March 31, 1999, the Association executed settlement offers with Tarnaris and Lewis, releasing them from liability regarding any of the events, actions, and omissions relating to the sale of the Murphy Lot.  The record does not contain a settlement agreement between the Association and Razny or Michael.  However, the affidavit of Frank Mondane, director, secretary, and treasurer of the Association, states that 
the
 board decided not to pursue litigation and settled its claims against Lewis, Tarnaris, Michael, and Razny.

In 1998, Dickler filed an action against the Association to collect amounts due to the firm by the Association (case No. 98--AR--1228).  In May 1999, the Association released any and all claims it had or may have had against Dickler, and the parties entered into an executed settlement agreement.

Thereafter, on September 3, 1999, plaintiffs filed the present action.  Plaintiffs' amended complaint raises against defendants allegations of (1) breach of fiduciary duty, (2) unjust enrichment, and (3) constructive fraud, and it requests the imposition of a constructive trust, a permanent injunction, and money damages.  Plaintiffs allege that each 
defendant
 failed to fully inform the board of the foreclosure action as it progressed and of his plan to obtain the Murphy Lot for himself.  Plaintiffs claim that 
defendant
s' actions deprived the Association of the opportunity 
to decide for itself whether and how much to bid at the public auction for the Murphy Lot.  Plaintiffs further allege that defendants engaged in subterfuge and took actions to undermine the board of directors after their scheme was uncovered rather than enter into good-faith negotiations with the Association in its attempt 
to settle this matter.

Michael, Razny, Lewis, and Tarnaris filed motions to dismiss the complaint pursuant to sections 2--615, 2--619, and 2--619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2--615, 2--619, 2--619.1 (West 1998)).  Dickler filed a motion to dismiss pursuant to section 2--619(a)(2), (a)(5), and (a)(6) (735 ILCS 5/2--619(a)(2), (a)(5), (a)(6) (West 1998)).  

The trial court dismissed the action "for the reasons stated in those Motions," including that (1) plaintiffs lacked standing individually; (2) there was no usurpation of corporate opportunity because the Association had full knowledge of the foreclosure sale; (3) the complaint lacked sufficient allegations to state a cause of action; (4) the settlement agreements releasing Tarnaris, Lewis, Razny, and Dickler are affirmative matters precluding the relief sought; (5) Tarnaris had no fiduciary duty to the Association; and (6) the claims against Dickler were barred by the statute of limitations.  The trial court further denied the motion for sanctions previously filed by Dickler.  Plaintiffs timely appeal.

The central issue before this court is whether the trial court erred in dismissing the complaint under sections 2--615 and 2--619. Regardless of whether the complaint is dismissed under section 2--615 or section 2--619, we apply a 
de
 
novo
 standard of review.  
Provenzale v. Forister
, 318 
Ill. App. 3d
 869, 874 (2001).  We affirm the trial court and impose sanctions pursuant to Supreme Court Rule 375(b) (155 Ill. 2d R. 375(b)) for the following reasons. 

Plaintiffs first argue that Lewis and Tarnaris filed an improper hybrid motion to dismiss that failed to set out which arguments were made under section 2--615 or under section 2--619. Plaintiffs further contend that the trial court's order of dismissal was improper because it also failed to cite each section of the Code that the court relied on in dismissing each count.  Our review of Lewis' and Tarnaris's motion to dismiss reveals that it clearly delineates the grounds upon which it requested dismissal.  Moreover, 
the
 court gave six reasons for dismissing the complaint, all of which were based on the grounds for dismissal stated in the various motions to dismiss filed by 
defendant
s.  However, even if we found that the trial court failed to specify which sections of the Code it relied upon in dismissing the complaint, we may affirm the decision for any reason appearing in the record regardless of the basis relied upon by the trial court.  See 
Geick v. Kay
, 236 
Ill. App. 3d
 868, 873 (1992).  Accordingly, we find plaintiffs' argument pointless.

Next, plaintiffs assert that the settlement agreements releasing 
Tarnaris, Lewis
, and Dickler from liability are invalid because those 
defendant
s were fiduciaries who breached an allegedly continuing duty to fully disclose all material fact with respect to the matters purportedly released by the agreements.  We note that plaintiffs do not dispute the existence of the releases, which clearly release Tarnaris, Lewis, and Dickler from the claims in the present suit.  See 735 ILCS 5/2--619(a)(9) (West 1998) (a release that negates a plaintiff's claim constitutes affirmative matter that requires dismissal).  

The presumption of fraud that accompanies transactions between fiduciaries does not apply where the fiduciary relationship no longer exists.  
Weisblatt v. Colky
, 265 
Ill. App. 3d
 622, 626 (1994).  At the time the releases were signed in March and May 1999, respectively, no fiduciary relationship existed between the Association and Lewis, Tarnaris, and Dickler.  Lewis terminated his service as director or officer of the Association in December 1997; Tarnaris's fiduciary responsibility expired in November 1998, the last time he allegedly served as a director, agent, or counsel of the Association; and Dickler's services terminated in December 1997.  Because Lewis, Tarnaris, and Dickler were not fiduciaries at the time the releases were negotiated, there was no presumption of fraud.  Moreover, even assuming that there was some duty to disclose, plaintiffs' argument lacks merit, as any claims the Association might have had against Tarnaris, Lewis, and Dickler were known by plaintiffs before the releases were executed.  We therefore reject this specious argument.

Plaintiffs also argue that Dickler's motion to dismiss was unsupported by affidavit.  Plaintiffs failed to raise this issue in the trial court, and we find this argument to be a malevolent "red herring."  Here, the law firm that is the party to the agreement and release is the same firm that prepared and signed the motion to dismiss that alleged the existence and validity of the release.  The attorney's signature constitutes a certification that the motion is well grounded in fact.  155 Ill. 2d R. 137.  Plaintiffs do not allege the nonexistence of Dickler's release, and the filing of an affidavit would have been merely cumulative.  Such a technicality, raised by plaintiffs for the first time without any evidence to dispute the execution and existence of the agreement, does not alter the manifest weight of the evidence regarding this issue.

Furthermore, regardless of the validity of the releases or any of the obtuse technicalities raised by plaintiffs, they have no standing to bring this action either individually or derivatively on behalf of the Association.  To maintain a suit on behalf of a corporation, an individual shareholder must allege and prove an equitable basis for such intervention, and a shareholder is no more entitled to challenge by a derivative suit a decision by the directors not to sue than to challenge any other action of the board.  
Axelrod v. Giambalvo
, 129 
Ill. App. 3d
 512, 519-20 (1984).  There are no allegations that the board in settling with 
defendant
s abused its discretion, was grossly negligent, or acted in bad faith or fraudulently.  Thus, plaintiffs cannot pursue litigation derivatively on behalf of the Association when the board voted not to proceed with litigation.  See 
Miller v. Thomas
, 275 
Ill. App. 3d
 779, 787 (1995)(shareholder should not undermine a corporate board's decision and file derivative suit simply because the corporate board chooses not to sue).  Furthermore, in Illinois, a shareholder seeking relief for an injury to the corporation, rather than a direct injury to the shareholder himself, must bring his suit derivatively on behalf of the corporation.  
Small v. Sussman
, 306 
Ill. App. 3d
 639, 643 (1999).  Plaintiffs' allegation that their assessments were increased on a "pro-rata dollar for dollar basis" because of the alleged misconduct is merely an indirect harm.  The alleged primary wrong is to the corporate body and, because plaintiffs have experienced no direct harm, they have no right to sue individually.  See 
Small
, 306 
Ill. App. 3d
 at 643.  We note further that plaintiffs' standing is undermined because the entire complaint alleges injury to the Association and fails to allege any injury to plaintiffs that is separate and distinct from any other Association member.  See 
Spillyards v. Abboud
, 278 
Ill. App. 3d
 663, 670-71 (1996).   

Even assuming that plaintiffs have standing to sue on behalf of the Association, we reject plaintiffs' claim that defendants usurped a corporate opportunity.  The corporate opportunity doctrine prohibits a corporation's fiduciary from misappropriating corporate property and from taking advantage of business opportunities that belong to the corporation.  
Dremco, Inc. v. South Chapel Hills Gardens
, 274 
Ill. App. 3d
 534, 538 (1995);  
Lindenhurst Drugs, Inc. v. Becker
, 154 
Ill. App. 3d
 61, 67 (1987).  An element of the theory of usurpation of corporate opportunity is the failure to first disclose the opportunity to the corporation, which would then allow the corporation to act upon it.  See 
Levy v. Markal Sales Corp.
, 268 
Ill. App. 3d
 355, 366 (1994).  

The gravamen of plaintiffs' complaint is the allegation that 
defendant
s took advantage of either their positions on the board or as agents of the Association to appropriate, in a common scheme, a business opportunity for themselves by concealing the acquisition of property for personal gain without first fully disclosing this opportunity to the Association.  However, there was no concealment.  The Association was fully informed of the foreclosure action, which it was prosecuting, and Goldberg was directly involved.  The sale of the property was by public auction pursuant to published notice.  Plaintiffs' assertions are unfounded.  Defendants' status as board members did not place them in a better position to purchase the Murphy Lot.

Plaintiffs argue that the Association's knowledge of the opportunity to buy the lot does not defeat an action for usurpation of corporate opportunity.  This argument ignores that the knowledge of the foreclosure is what forms the basis of the determinations that none of the 
defendant
s acted secretly or that the Association did not have sufficient information and the ability to act upon the purported "opportunity."  Notwithstanding, plaintiffs fail to recognize that a corporate opportunity exists where the proposed activity is reasonably incident to the corporation's present or prospective business and one in which the corporation has the capacity to engage.  
Lindenhurst Drugs
, 154 
Ill. App. 3d
 at 67-68.  Here, it is clear from our review of the Association's declaration that it is in the business of administrating and maintaining the existing property, not purchasing new property.  Although the Association may have had the capacity to purchase the Murphy Lot or an "interest" in acquiring the lot, as plaintiffs allege, it is clear that such a purchase would not be "incident" to the Association's business or hinder or defeat the plans and purposes of the Association.  In fact, the complaint alleges that the Association had never before engaged in a judicial sale.  To assert that the Association was not sufficiently informed of the foreclosure sale, that 
defendant
s somehow acted secretly, or that the Association was deprived of a corporate opportunity is simply 
without basis in fact.

Plaintiffs argue that, "[b]y opting to redeem Murphy's property taxes rather than purchase the relevant tax certificates from its then current owner(s), Dickler thus deprived Glenstone of a more efficacious remedy."  Plaintiffs ignore well-settled law that the Association, as a lien holder, may not purchase the tax certificate.  See 
In re Application of Boone County Collector
, 131 
Ill. App. 3d
 939, 941 (1985) (it is against public policy for an association lien holder to purchase a tax certificate, as it cuts off claims of other lien holders).

Finally, although only 
Dickler has requested that we impose sanctions under Supreme Court Rule 375(b) (155 Ill. 2d R. 375(b)) for filing a frivolous and bad-faith appeal
, 
a
 reviewing court may impose sanctions against a party for an appeal that is either frivolous or not taken in good faith.  
Belfour v. Schaumburg Auto
, 306 Ill. App. 3d 234, 244 (1999).  An appeal will be deemed "frivolous" where it is not reasonably well-grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, or if a reasonable and prudent attorney would not have brought the appeal.  
Belfour
, 306 Ill. App. 3d at 244.  An appeal or other action will be deemed to have been taken or prosecuted for an improper purpose where the primary purpose of the appeal or other action is to delay, harass, or cause needless expense.  155 Ill. 2d R. 375(b).  Rule 375 sanctions are penal and should be applied only to those cases falling strictly within the terms of the rule.  
Belfour
, 306 Ill. App. 3d at 244. 

As elaborated throughout this appeal,
 plaintiffs' complaint alleges that 
defendant
s secretly prevented the Association from purchasing the Murphy Lot when plaintiffs unquestionably knew or had reason to know that the property was in foreclosure and that the auction of the property was a matter of public record.  Yet, not only do plaintiffs, and their counsel, continue to gloss over this fact, they also ignore that the Association decided not to pursue any litigation regarding the Murphy Lot and settled 
with all of the 
defendant
s.  
Particularly alarming is
 plaintiffs' attempt to shield their unquestionably meritless claims by raising other irrelevant issues
. 

We therefore direct plaintiffs and their attorneys, Sonnenschein Nath & Rosenthal, to file, within 14 days, a brief or memorandum with this court showing why we should not impose sanctions or attorney fees under Supreme Court Rule 375(b).

Should we thereafter decide that this appeal warrants sanctions, we shall order, in due course, that all 
defendant
s either resubmit their previously filed statements of reasonable expenses and attorney fees incurred as a result of this appeal or file an amended request, with an appropriate opportunity for plaintiffs and their counsel to respond.  
We will thereafter file a supplemental opinion or order determining the amount of the sanction to be imposed on plaintiffs
 and Sonnenschein Nath & Rosenthal.  See 
First Federal Savings Bank of Proviso Township v. Drovers National Bank of Chicago
,  237 Ill. App. 3d 340, 347-48 (1992).

For the foregoing reasons, we affirm the judgment of the circuit court of Lake County, and we issue a rule to show cause.  

Affirmed; rule to show cause issued. 

McLAREN and KAPALA, JJ., concur.