In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 06-1720 & 06-1767

RAHEEMUNISA RAWOOF, Representative
of the Estate of Mohammed Rawoof,

*Plaintiff-Appellant/Cross-Appellee,*

*v.*

TEXOR PETROLEUM COMPANY, INCORPORATED,

*Defendant-Appellee/Cross-Appellant.*

_____

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 5892—**George M. Marovich**, *Judge.*

_____

ARGUED JANUARY 19, 2007—DECIDED APRIL 7, 2008

_____

Before RIPPLE, KANNE, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Mohammed Rawoof filed this lawsuit against Texor Petroleum Company ("Texor") alleging that Texor violated the Petroleum Marketing Practices Act ("PMPA") by terminating his gas station's "Marathon" brand motor-fuel franchise without the statutorily required notice and cause. Almost two years into the litigation, on the day discovery was to close, Rawoof brought a motion to substitute plaintiffs, asserting

that his corporation, SHL 95, Inc. ("SHL 95"), was the
real party in interest. Rawoof maintained that the PMPA
claim belonged to the corporation, not to him personally,
because the corporation conducted the gas station's
business activities, owned its real estate and fixtures,
and sustained the losses associated with the termination
of the franchise. The district court denied the motion
because Rawoof knew all along that SHL 95 was the real
party in interest and substituting parties at that late stage
of the litigation would prejudice Texor. Texor then
moved for summary judgment on standing grounds. The
district court granted the motion, reasoning that Rawoof
had admitted that the PMPA claim belonged to the corpo-
ration and that he could not bring suit in his own name
because his only injury was the indirect, derivative
injury of a shareholder. Rawoof appeals, and we affirm.

## I. Background

The parties have a rather loose and informal contractual
history that has been the subject of litigation in both state
and federal court. In the present suit, Rawoof alleged that
in February 1998 he entered into an oral agreement with
Texor whereby Texor would supply gasoline to Rawoof's
Chicago gas station. This agreement was to last for seven
years. In addition to other provisions, Rawoof alleged
that Texor agreed to provide and install a Marathon sign
at the station, and in return Rawoof was required to sell
under the Marathon brand and purchase his petroleum
products exclusively from Texor. In 2000 a dispute arose
between the parties over prices Texor charged for gasoline
it delivered to Rawoof's station. Rawoof thought he
was being overcharged and protested Texor's invoices.
On April 20, 2001, Texor suspended gasoline deliveries

due to nonpayment; on July 11, 2001, Texor filed suit against Rawoof in Cook County Circuit Court for money due for gasoline previously sold and delivered. Rawoof appeared in that suit on August 16, 2001. On August 29, 2001, the parties signed a settlement agreement establishing a payment schedule for the balance due, and Rawoof was informed that his station's relationship with Texor was being terminated and the Marathon signs would be removed immediately.

On August 19, 2002, Rawoof filed suit in federal district court alleging that Texor violated the PMPA by terminating his franchise without the required statutory notice and cause. *See* 15 U.S.C. §§ 2802, 2804. Texor moved to dismiss on statute-of-limitations grounds, arguing that the PMPA's one-year limitations period began to run on July 11, 2001, when it filed suit in Cook County Circuit Court, or at the latest on August 16, 2001, when Rawoof appeared in that suit. By then, Texor argued, Rawoof knew or had reason to know that his gas station's relationship with Texor was terminated. Rawoof filed a response to this motion and also filed a breach-of-contract action against Texor in Cook County Circuit Court, evidently hedging his bets against a statute-of-limitations dismissal of his federal PMPA claim. The district court denied Texor's motion, holding that the PMPA's one-year limitations period began to run when Rawoof and Texor entered into the settlement of Texor's state-court litigation and Texor advised Rawoof his station was being debranded immediately. According to the district court, Rawoof had gotten his PMPA action in just under the wire.

Discovery proceeded, but not without some difficulty, eventually necessitating a motion to compel by Texor. The

motion was heard by a magistrate judge on July 27, 2004, the day discovery was set to close; the judge granted the motion in part and denied it in part, and extended discovery for an additional 30 days to accommodate compliance with his order. In the meantime, on that same day, Rawoof filed his motion to substitute plaintiffs. Rawoof argued that his Illinois S-corporation, SHL 95, was the real party in interest, not Rawoof individually. Rawoof told the court that the gas station's revenue and tax liabilities were reported through SHL 95, which also held legal title to the service station's real property and fixtures. The corporation operated the station and suffered the losses resulting from the termination of the Marathon franchise. Rawoof was SHL 95's sole stockholder, officer, and director, but in his motion he acknowledged "the well-settled rule that a plaintiff-stockholder may not seek relief on his own behalf when the plaintiff has not been injured" other than in his capacity as a stockholder. Accordingly, Rawoof asserted, the PMPA claim belonged to the corporation and not to him personally, and he asked leave to substitute SHL 95 as the plaintiff. Rawoof died in September 2004 while the substitution motion was pending.[1]

The district court denied Rawoof's motion for substitution. The court explained that Rawoof had known SHL 95 was the real party in interest since the commencement of the litigation and there was no reason why the suit could not have been prosecuted by the corporation from the

---

[1] Following Rawoof's death, this action has been prosecuted by his widow, Raheemunisa Rawoof, as representative of his estate. For simplicity, we will continue to refer to Rawoof as the plaintiff.

beginning. The court noted that the motion was filed nearly two years after the action was commenced and on the day discovery was scheduled to close, and held that Texor would be prejudiced if substitution were allowed so late in the litigation. The court noted in particular that with Rawoof's death, Texor could no longer conduct a corporate-officer deposition according to Rule 30(b)(6) of the *Federal Rules of Civil Procedure*.

Texor then moved for summary judgment, arguing that Rawoof's admissions in his motion to substitute and the court's order denying that motion suggested Rawoof lacked standing to bring the suit because he had not suffered any direct, personal injury from the termination of the franchise. In response, Rawoof changed course and argued that he was indeed entitled to pursue the PMPA claim in his own name.

The district court granted Texor's summary-judgment motion, holding that constitutional standing was established but prudential standing was not. Noting the shareholder-standing rule, *see Franchise Tax Bd. of Cal. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 336 (1990), which prohibits shareholders from suing to enforce the rights of the corporation, the district court held Rawoof lacked prudential standing because he suffered only an indirect, derivative injury as SHL 95's sole shareholder. The court found no evidence of a direct, personal injury distinct from that of a shareholder that would allow Rawoof to sue in his own name. The court also gave little weight to shareholder resolutions adopted in February 2005 (months after Rawoof died and the motion to substitute was denied) purporting to ratify Rawoof's prosecution of the corporation's claims. According to the court, it was too late for SHL 95 to proffer a Rule 17(a)

ratification.[2] Although it granted Texor's motion for
summary judgment, the court declined to award Texor
attorney's fees as a prevailing franchisor under the PMPA.
Rawoof appealed from the order granting summary
judgment, and Texor cross-appealed the denial of its
motion to dismiss on statute-of-limitations grounds and
the denial of its motion for attorney's fees.

## II. Discussion

### A. Rawoof's Appeal

Rawoof does not directly challenge the district court's
denial of his motion to substitute plaintiffs. Instead, his
appeal focuses on the court's summary-judgment ruling
dismissing his case on standing grounds. We review
de novo the district court's grant of summary judgment
and will construe all facts and inferences drawn from
them in the light most favorable to the nonmoving party.
*Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 780 (7th Cir. 2007).
Summary judgment is appropriate if "the pleadings,
depositions, answers to interrogatories, and admissions

---

[2] Rule 17(a) of the *Federal Rules of Civil Procedure* provides, in
part, that:

> Every action shall be prosecuted in the name of the real
> party in interest. . . . No action shall be dismissed on the
> ground that it is not prosecuted in the name of the real party
> in interest until a reasonable time has been allowed after
> objection for ratification of commencement of the action
> by . . . the real party in interest; and such ratification,
> joinder, or substitution shall have the same effect as if the
> action had been commenced in the name of the real party
> in interest.

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Standing questions are reviewed de novo. *Winkler v. Gates*, 481 F.3d 977, 982 (7th Cir. 2007); *Wis. Right to Life, Inc. v. Schober*, 366 F.3d 485, 489 (7th Cir. 2004).

Rawoof argues that he is entitled to bring SHL 95's PMPA claim in his own name, either because he is a party in interest or because he stands in the shoes of SHL 95. The PMPA requires notice and cause before a motor-fuel franchise may be terminated; "franchise," "franchisor," "franchisee," and "franchise relationship" are defined terms under the PMPA, and the statute's notice and cause requirements differ according to the circumstances. *See* 15 U.S.C. §§ 2801 *et seq.* The merits of the PMPA claim are not before us on this appeal, so we may omit any further discussion of the statute's requirements. It is enough to note that the statute grants motor-fuel franchisees the right to bring a civil action for equitable relief, actual and exemplary damages, and reasonable attorney's and expert witness fees for a violation of the PMPA. 15 U.S.C. § 2805.

Rawoof's arguments begin with Rule 17(a) of the *Federal Rules of Civil Procedure*, which requires federal lawsuits to be brought by the real party in interest, but identifies certain persons who are authorized to prosecute an action for the benefit of another. *See supra* n.2. Executors, guardians, and trustees are the most common examples. *See* FED. R. CIV. P. 17(a). Rawoof fashions three arguments as to why he is entitled to pursue the PMPA claim belonging to his corporation: First, he claims that he is an agent

of SHL 95; second, he says he entered into the contract
with Texor for the corporation as a third-party beneficiary;
and, third, he alleges SHL 95 assigned its claims to him.

A brief preliminary discussion of standing and the
requirements of FED. R. CIV. P. 17 is in order. Rawoof
maintained in his motion to substitute that the PMPA
claim belonged to the corporation, SHL 95, and not to
himself personally, and as such, the corporation, not he,
was the real party in interest. This can only be construed
as an admission by Rawoof; an "admission" for purposes
of summary judgment "includes 'anything which is in
practical fact an admission,' including statements made
in a brief presented to the district court." *Woods v. City of
Chicago*, 234 F.3d 979, 989 (7th Cir. 2000) (citations omitted).

Under Rule 17(a), as we have noted, "[e]very action shall
be prosecuted in the name of the real party in interest."
This is a procedural rule requiring that the complaint be
brought in the name of the party to whom that claim
"belongs" or the party who "according to the governing
substantive law, is entitled to enforce the right." *Oscar
Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 193 (2d Cir.
2003) (quoting 6A CHARLES ALAN WRIGHT, ET AL., FEDERAL
PRACTICE & PROCEDURE § 1543, at 334 (2d ed. 1990)); *Frank
v. Hadesman & Frank, Inc.*, 83 F.3d 158, 159 (7th Cir. 1996).
Under Rule 17 we are concerned only with whether an
action can be maintained in the plaintiff's name, *Betar v.
De Havilland Aircraft of Can., Ltd.*, 603 F.2d 30, 32 (7th Cir.
1979), and that question is resolved in this case by fed-
eral law, *Bagdon v. Bridgestone/Firestone, Inc.*, 916 F.2d 379,
382 (7th Cir. 1990). This case states a federal claim, and
federal rules of procedure and standing obviously
govern. Both parties, however, cite Illinois state-law
cases and Illinois contract principles, which we will

address only to the extent not inconsistent with federal law and relevant to the question of Rawoof's standing to pursue the corporation's PMPA claim in his own name.

The requirements of Rule 17 should not be confused with the jurisdictional doctrine of standing. As part of Article III's case-or-controversy requirement, a party must demonstrate standing to sue in federal court by establishing (1) an injury in fact; (2) "a causal connection between the injury and the conduct complained of"; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Allen v. Wright*, 468 U.S. 737, 750-51 (1984). We agree with the district court that Rawoof satisfies the minimum requirements of constitutional standing by virtue of an asserted indirect injury as SHL 95's sole shareholder.

In addition to constitutional-standing requirements, however, there are prudential limitations on a federal court's power to hear cases. *See Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 474-75 (1982); *Warth v. Seldin*, 422 U.S. 490, 498 (1975); *Mainstreet Org. of Realtors v. Calumet City, Ill.*, 505 F.3d 742, 745 (7th Cir. 2007); *Massey v. Helman,* 196 F.3d 727, 739 (7th Cir. 1999). Prudential-standing doctrine "is not jurisdictional in the sense that Article III standing is." *Mainstreet Realtors*, 505 F.3d at 747. That is, "if there is no Article III standing, the court is obliged to dismiss the suit even if the standing issue has not been raised," but "nonconstitutional lack of standing belongs to an interme-diate class of cases in which a court can notice an error and reverse on the basis of it even though no party has noticed it and the error is not jurisdictional, at least in the conventional sense." *Id.* In other words, the court may

raise an unpreserved prudential-standing question on its own, but unlike questions of constitutional standing, it is not obliged to do so. In this case, questions of standing—both constitutional *and* prudential—were raised in the district court and argued on appeal.

One well-established prudential-standing limitation is the principle that a litigant cannot sue in federal court to enforce the rights of third parties. *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 17-18 (2004); *Warth*, 422 U.S. at 499; *Mainstreet Realtors*, 505 F.3d at 746; *Massey*, 196 F.3d at 739; *Retired Chi. Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996). Some courts have described Rule 17's real-party-in-interest requirement as essentially a codification of this nonconstitutional, prudential limitation on standing. *See, e.g.*, *Warnick v. Yassian (In re Rodeo Canon Dev. Corp.)*, 362 F.3d 603, 607-08 (9th Cir. 2004) (*withdrawn on other grounds*); *Ensley v. Cody Res., Inc.*, 171 F.3d 315, 320 (5th Cir. 1999).

Here, the district court granted Texor's motion for summary judgment because Rawoof ran afoul of a particular subset of third-party standing doctrine known as the shareholder-standing rule. This rule holds that a shareholder generally cannot sue for indirect harm he suffers as a result of an injury to the corporation. *See Franchise Tax Bd. of Cal.*, 493 U.S. at 336; *Warth*, 422 U.S. at 499; *Flynn v. Merrick*, 881 F.2d 446, 449 (7th Cir. 1989); *Twohy v. First Nat'l Bank of Chi.*, 758 F.2d 1185, 1194 (7th Cir. 1985). The rule does not apply if the corporation's management has refused to pursue the action for reasons unrelated to good-faith business judgment. *See Franchise Tax Bd. of Cal.*, 493 U.S. at 336. Another exception to the prohibition on shareholder suits allows a shareholder to pursue an action originating from an injury to the

corporation if he has suffered a direct, personal injury independent of the derivative injury common to all shareholders. *See id.* at 337; *Twohy*, 758 F.2d at 1194; *see also Goldberg v. Michael*, 766 N.E.2d 246, 251 (Ill. App. Ct. 2002); *Sterling Radio Stations, Inc. v. Weinstine*, 765 N.E.2d 56, 60 (Ill. App. Ct. 2002); *Small v. Sussman*, 713 N.E.2d 1216, 1219 (Ill. App. Ct. 1999). Finally, a shareholder may sue to vindicate an injury even where the corporation may bring the action if "a special contractual duty exists between the wrongdoer and the shareholder." *Twohy*, 758 F.2d at 1194; *Eden v. Miller*, 37 F.2d 8, 9-10 (2d Cir. 1930).

Rawoof acknowledges the rule against shareholder standing but argues he is nonetheless entitled to bring this suit in his own name. He makes no effort, however, to bring himself within any of the recognized exceptions we have just listed. Instead, he invokes the agency doctrine applicable to liability issues when an agent acts for an undisclosed principal. *See* RESTATEMENT (THIRD) OF AGENCY § 6.03 (2006). Rawoof asserts that if one accepts the premise that he entered into the purported oral franchise agreement with Texor but that SHL 95 alone suffered the injury from its termination, Rawoof's status as an agent for SHL 95 as undisclosed principal follows "as a matter of law."

Texor counters that Rawoof's position on this point lacks factual and legal support. We agree. "Agency is a consensual, fiduciary relationship between two legal entities created by law, where the principal has the right to control the activities of the agent, and the agent has the power to conduct legal transactions in the name of the principal." *Knauerhaze v. Nelson*, 836 N.E.2d 640, 660 (Ill. App. Ct. 2005) (quoting *Caligiuri v. First Colony Life Ins. Co.*, 742 N.E.2d 750, 756 (Ill. App. Ct. 2000)). Rawoof appears

to argue that the district court's denial of his motion to substitute somehow *requires* the conclusion that he acted as an agent for SHL 95, an undisclosed principal, in connection with the franchise agreement with Texor. This is certainly not true as a legal matter; Rawoof's status as sole shareholder, officer, and director of SHL 95 does not automatically make him an agent of the corporation for purposes of the transaction in question here. *See, e.g.*, *Knauerhaze*, 836 N.E.2d at 669.

Moreover, Rawoof cites no evidentiary support for his agency claim, and our independent review of the proposed findings of fact on summary judgment and Rawoof's responses to them yields none. *See Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 610 (7th Cir. 2005) (explaining that district court need not scour the record to find evidence supporting a party's burden of production on an issue); *see also Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quoting *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 2005) (explaining that summary judgment is the "put up or shut up" moment in an action where a party must identify the evidence it has that would convince a trier of fact)). In any event, this particular agency doctrine generally defines the rights and obligations of the undisclosed principal vis-à-vis third parties with whom an agent with actual authority contracts on behalf of the undisclosed principal. *See* RESTATEMENT (THIRD) OF AGENCY § 6.03 cmt. a. It is less commonly used as a basis for the alleged agent to assert, in his own name, the rights of the principal against a third party. More importantly, as we have noted, Rawoof has made no effort to develop a factual basis for this claim, which requires, among other things, that an agent have *actual* authority,

*see id.* §§ 2.01, 2.02; act on behalf of an undisclosed principal, *see id.* §§ 1.04(2)(b), 6.03; and that the third party have notice that the agent is acting on behalf of an undisclosed principal, *see id.* § 4.

Rawoof next argues that SHL 95 was a third-party beneficiary to the alleged franchise agreement entered into with Texor. Under Illinois law, which Rawoof invokes for this argument, a third party may be an intentional or incidental beneficiary of a contract entered into between others. *See Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 734 (7th Cir. 2005); *Estate of Willis II v. Kiferbaum Constr. Corp.*, 830 N.E.2d 636, 643 (Ill. App. Ct. 2005). "An intended beneficiary is intended by the parties to the contract to receive a benefit for the performance of the agreement and has rights and may sue under the contract; an incidental beneficiary has no rights and may not sue to enforce them." *Estate of Willis II*, 830 N.E.2d at 643; *MBD Enters., Inc. v. Am. Nat'l Bank of Chi.*, 655 N.E.2d 1061, 1064 (Ill. App. Ct. 1995). There is a strong presumption in Illinois law against the creation of contractual rights in third parties, *see Bates & Rogers Constr. Corp. v. Greeley & Hansen*, 486 N.E.2d 902, 906 (Ill. 1985); any intent to benefit a third party must be discernible in the language and circumstances of the contract, *see Estate of Willis II*, 830 N.E.2d at 642-43.

Here again, there is no factual or legal support for Rawoof's third-party beneficiary argument. The purported agreement between Texor and Rawoof made no mention of SHL 95, *see id.*, and there is no other evidence to establish that Rawoof and Texor intentionally entered into the franchise agreement for the benefit of SHL 95. To the contrary, the evidence suggests Texor did not know that Rawoof's gas station was owned and operated by

SHL 95 until late in this litigation. More fundamentally, as a legal matter, Rawoof's argument has things backward. If a contract is entered into intentionally for the benefit of a third party, the third-party beneficiary would have standing to sue on the contract. Rawoof is attempting to use this doctrine to support *his own* standing—not that of the alleged third-party beneficiary—in an effort to get around his admission that the third party, SHL 95, is in fact the real party in interest.

Rawoof's third argument occupies much of his briefing; he claims he is the assignee of SHL 95's PMPA claim. This is the point at which Rawoof's attempt to fit this case into a legal theory reaches the breaking point. Although his briefing is lengthy on this point, Rawoof does not come close to developing a meaningful assignment argument, perhaps because there is no evidence whatsoever of any actual assignment. Rather, he asserts that SHL 95 *acquiesced in* or *ratified* his pursuit of the PMPA claim (either implicitly or explicitly), and then he proceeds to use the terms "assignment" and "ratification" interchangeably. As best we can tell, the "ratification" argument appears to consist of two separate contentions. First, Rawoof argues that because he was SHL 95's sole shareholder, his filing of the PMPA claim was tantamount to ratification of that action by the corporation. Second, he claims that SHL 95 actually ratified, by after-the-fact resolutions, his bringing of the action in his own name. Neither of these claims has merit.

Rawoof has not cited any case announcing a rule that a suit brought by a sole shareholder for harm done to the corporation is itself evidence of either an assignment or ratification by the corporation. He cites several cases regarding the ability of creditors to reach corporate assets

diverted to shareholders in closely held corporations, *see, e.g., Scholes v. Lehmann*, 56 F.3d 750, 754 (7th Cir. 1995); *Dannen v. Scafidi*, 393 N.E.2d 1246, 1250-51 (Ill. App. Ct. 1979), but we fail to see the relevance of this line of cases to the question presented here.[3] Rawoof's claim that the corporation explicitly (as opposed to implicitly) ratified his filing of this suit is based on the following events: (1) in September 2002 (and one month after the filing of the complaint in this action), Rawoof and his wife created a trust, of which they were both cotrustees; (2) in February 2003, Rawoof issued all of SHL 95's authorized stock to the trust; (3) in February 2005, well after Rawoof's death, the trust, acting through his wife (now the sole trustee), issued a resolution ratifying Rawoof's having brought suit in his own name and his substitution of the estate in that suit; and (4) as SHL's sole director, Rawoof's wife later issued another "ratification" resolution identical to the resolution issued by the trust.

Texor raises the potentially alarming prospect that Rawoof either manufactured documents to support the foregoing factual scenario in order to stave off summary judgment, or withheld them in disregard of previous

---

[3] We have no disagreement with our dissenting colleague regarding the state of Illinois law on shareholder ratification and corporate assignment of corporate assets. None of the cases cited, however, supports the proposition that the act of filing suit is itself evidence of an assignment of the action or an implicit or explicit ratification by the corporation of the shareholder's appropriation of the action, and Rawoof has developed no other factual basis for this argument. Indeed, as we discuss further *infra*, the attempt to substitute the corporation for Rawoof as plaintiff undermines Rawoof's assignment/ratification theory.

discovery requests. There may be something to at least the latter of these admittedly serious allegations. When arguing his substitution motion before the district court in July and August 2004, Rawoof represented he "is, and has been, the sole officer, director and stockholder of the S-corporation since its inception." However, Rawoof's wife submitted an affidavit in response to Texor's motion for summary judgment attaching documents that purported to show that all of SHL's stock was transferred to a trust *in 2003*—a trust of which she and her husband were cotrustees.

We need not attempt to reconcile these conflicting representations or determine whether they amount to discovery violations. While it is true that ratification is a legitimate way to cure an initial failure to prosecute an action in the name of the real party in interest under FED. R. CIV. P. 17(a), here, Rawoof attempted to use it as a means of escaping the consequences of the denial of his motion to substitute plaintiffs. The district court held that the purported "ratification" in this case came too late—in response to Texor's motion for summary judgment and long after the court had denied the substitution motion. The court understandably considered the belated ratification effort as an end run around its prior order denying substitution of plaintiffs. Rawoof claims that the ratification resolutions by the trust simply "reinforced" the initial, implicit ratification. As with Rawoof's other arguments, there is no support for this proposition.

Rawoof is barred by the shareholder-standing rule from pursuing this PMPA claim. He lacks a direct, personal injury independent of the derivative injury of a shareholder generally, and has otherwise failed to bring himself within one of the recognized exceptions to the

shareholder-standing rule. Accordingly, the district court properly dismissed this case for lack of prudential standing.

### B. Texor's Cross-appeal

Texor cross-appealed the district court's denial of its motion to dismiss on statute-of-limitations grounds and the court's denial of its request for attorney's fees. Because we are affirming the district court's order dismissing the case for lack of standing, we need not address the question of the PMPA's statute of limitations. That leaves Texor's request for attorney's fees. A grant or denial of attorney's fees under the PMPA is reviewed for abuse of discretion. *See Four Corners Serv. Station, Inc. v. Mobil Oil Corp.*, 51 F.3d 306, 315 (1st Cir. 1995). The PMPA permits an award of attorney's fees to a prevailing franchisor if the action is deemed frivolous. *See* 15 U.S.C. § 2805(d)(3). The district court did not abuse its discretion in declining to find this action frivolous. We agree with the district court that Rawoof's prolonged neglect of SHL 95's status as the real party in interest is inexplicable under the circumstances. But the price of that neglect was the denial of his motion to substitute plaintiffs. Rawoof's arguments regarding his personal standing to pursue this action, while belated and ultimately meritless, were not so unreasonable as to be frivolous.

AFFIRMED.

RIPPLE, *Circuit Judge*, dissenting.  I agree with my colleagues that Mr. Rawoof has established constitutional standing to pursue this action against Texor. However, I do not believe that principles of prudential standing counsel against exercising federal jurisdiction under these circumstances. I therefore respectfully dissent.

A party seeking to invoke the power of the federal judiciary must establish that he has standing to bring the action. Standing consists of both constitutional requirements, flowing from the Article III limitation on judicial power to "cases" and "controversies," and prudential limitations on the exercise of federal jurisdiction. *See Franchise Tax Bd. of California v. Alcan Aluminum Ltd.*, 493 U.S. 331, 335 (1990). Among the prudential limitations on standing is the prohibition against third-party standing. *Id.* at 336. This prohibition bars a person from asserting the claims of a third party not before the court, even when the constitutional requirements for standing—injury in fact, causation and redressability—have been met. *See id.; see also* Erwin Chemerinsky, *Federal Jurisdiction* § 2.3.4 at 83 (4th ed. 2003). The rule against third party standing serves a number of goals, including avoiding officious intermeddling by ensuring that the court does not adjudicate rights an individual does not wish to assert and ensuring that a party has a concrete interest in the rights he is asserting. *See* Chemerinsky, *Federal Jurisdiction* § 2.3.4 at 83.

The shareholder standing rule is a corollary to the rule against third-party standing and generally prohibits shareholders from asserting claims that belong to the corporation. *Franchise Tax Bd.*, 493 U.S. at 336. This general rule applies even when the shareholder in question is the sole shareholder and officer of the corporation.

*Carney v. Gen. Motors Corp.*, 23 F.3d 1154, 1157 (7th Cir. 1994).

Under the shareholder standing rule, injuries to the shareholder which are derived solely from injuries to the corporation, for instance, diminution of share price, belong to the corporation. A shareholder only may bring an action for such injuries in the form of a derivative action on behalf of the corporation. *See* 12B William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 5911 (Perm. ed. 2000) [hereinafter *Fletcher Cyclopedia of Corporations*]. Limiting these actions to derivative actions serves a number of interests. First, the rule avoids multiplicitous litigation by various shareholders which, in addition to straining the resources of the courts and potential defendants, may bar an action by the corporation itself or subject the defendant to double liability if the corporation were to sue on its own behalf. *See Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 647 (7th Cir. 2006); 12B *Fletcher Cyclopedia of Corporations* § 5910. Additionally, restricting such actions to derivative actions directs any recovery to the corporation and thus protects the interests of the corporation's creditors and other shareholders. *See Massey*, 464 F.3d at 647; 12B *Fletcher Cyclopedia of Corporations* § 5910. Further, procedural requirements that govern derivative actions, particularly the requirement that the shareholder first must demand that the corporation's directors take action, prevent shareholders from interfering with the business judgment of the directors in whom the corporation's management is entrusted. *See Massey*, 464 F.3d at 647; 13 *Fletcher Cyclopedia of Corporations* § 5963.

There is an exception to the shareholder standing rule for shareholders who are injured as individuals rather

than as shareholders. 12B *Fletcher Cyclopedia of Corporations* § 5911. In such cases, the shareholder may be said to hold a "direct, personal interest," and may pursue a direct action even if the wrongful act also implicates the corporation's rights. *Id.; see also Franchise Tax Bd.*, 493 U.S. at 336; Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law* § 2.13 at 259 (3d ed. 1999). The most common example of such an injury is when the shareholder is a party to the contract upon which the action is based. *See* 12B *Fletcher Cyclopedia of Corporations* § 5911.

Although federal law generally controls the question of standing, whether the shareholder's claims are derivative or direct for purposes of the shareholder standing rule is controlled by the law of the state of incorporation, in this case, Illinois. *See Massey*, 464 F.3d at 645. Illinois follows the general approach to the shareholder standing rule stated above, including the exception to the rule that permits a shareholder to assert a direct action when the shareholder suffers an individual injury apart from his status as a shareholder. *See Zokoych v. Spalding*, 344 N.E.2d 805, 813 (Ill. App. Ct. 1976); *Mann v. Kemper Fin. Cos., Inc.*, 618 N.E.2d 317, 323 (Ill. App. Ct. 1992). The question thus becomes whether, under Illinois law, Mr. Rawoof's claims are direct rather than derivative.

Mr. Rawoof advances three theories in support of his contention that his claim against Texor is direct rather than derivative. His first argument is that his claim is not barred because he and Texor were the parties to the fuel contract, with SHL 95 merely as a third-party beneficiary. This argument is not meritorious. Mr. Rawoof did not present any evidence in support of this theory before the district court and therefore raised no genuine issue of material fact in support of this theory that would preclude summary judgment.

In addition to his third-party beneficiary argument, Mr. Rawoof offers two other arguments that warrant more extended discussion. First, he maintains that he is an implied assignee of SHL 95's cause of action against Texor. Second, he claims that he negotiated the contract with Texor on behalf of a partially disclosed principal—SHL 95; consequently, he may pursue the action in his individual capacity. These arguments are explored more fully below.

## I

Mr. Rawoof argues that SHL 95 assigned to him its cause of action against Texor at the time he brought this suit by implicitly ratifying his appropriation of SHL 95's rights against Texor under the franchise agreement. Under Illinois law, a chose in action is assignable personal property, *Saltzberg v. Fishman*, 462 N.E.2d 901, 905 (Ill. App. Ct. 1984). An assignment transfers "to the assignee all the right, title or interest of the assignor in the thing assigned." *A.J. Maggio Co. v. Willis*, 738 N.E.2d 592, 596 (Ill. App. Ct. 2000). Following a valid assignment, the assignee may bring an action in his own name. *See* 735 ILCS 5/2-403(a); *Kennedy v. Deere & Co.*, 492 N.E.2d 199, 202 (Ill. App. Ct. 1986); *Saltzberg*, 462 N.E.2d at 905. Further, an assignment divests the assignor of all rights in the property assigned and places the assignee in the shoes of the assignor with respect to the property. *See People v. Wurster*, 422 N.E.2d 650, 652 (Ill. App. Ct. 1981). Thus, following a valid assignment of a chose in action, a corporation may not bring an action to enforce the rights assigned. Because the corporation itself may not bring the action, it cannot be brought as a derivative action either. *See Mann*, 618 N.E.2d at 326.

Under Illinois law, shareholders may ratify the appropriation of corporate assets by a corporate officer or director for non-corporate purposes if such ratification is unanimous and the appropriation does not prejudice the rights of creditors, *see Scholes v. Lehmann*, 56 F.3d 750, 754 (7th Cir. 1995); *Steinberg v. Buczynski*, 40 F.3d 890, 892 (7th Cir. 1994); *Dannen v. Scafidi*, 393 N.E.2d 1246, 1250 (Ill. App. Ct. 1979); the same rule applies even if there is only one shareholder, *see Scholes*, 56 F.3d at 754. Shareholder ratification may be found by implication, *see Roth v. Ahrensfeld*, 27 N.E.2d 445, 447 (Ill. 1940); *Forkin v. Cole*, 548 N.E.2d 795, 807 (Ill. App. Ct. 1989), and Illinois courts will find unanimous shareholder approval "obvious" when the corporate officer appropriating the asset for non-corporate purposes is the sole shareholder of the corporation, *Dannen*, 393 N.E.2d at 1251. Thus, under Illinois law, a valid assignment of a corporate asset to a corporation's sole shareholder for his own purposes may be found without an express assignment when he takes the action for his own purposes and the ratification works no prejudice to the corporation's creditors.[1]

---

[1] As noted above, a valid assignment of a corporation's chose in action divests the corporation of its interest in that action. For that reason, an action by a corporation's sole shareholder in his individual capacity asserting rights assigned to him by the corporation does not implicate the shareholder standing rule. It is clear, also, that an assignment of a chose in action under such circumstances does not threaten the interests advanced by the shareholder standing rule. First, the ratification must be unanimous, thus it does not provide the shareholder to whom the chose in action is assigned with an unfair advantage over other shareholders. Second, because the ratification is only

(continued...)

Given the state of Illinois law, I believe Mr. Rawoof may pursue the present action against Texor. It is undisputed that, at the time he brought this action, Mr. Rawoof was the sole officer, director and shareholder of SHL 95. Thus, under Illinois law, unanimous approval of the assignment is assumed. Because there is no suggestion that the assignment would prejudice SHL 95's creditors, the assignment is ratified. Further, we may assume such implicit ratification happened, at the latest, when Mr. Rawoof filed this action, ensuring that the shareholder standing rule posed no bar from the very outset of this litigation.[2] For these reasons, Mr. Rawoof had

---

[1] (...continued)
effective if it does not prejudice the rights of creditors, such an assignment does not threaten to bypass normal rules of priority with respect to corporate obligations. Third, because the assignment divests the corporation of its interests in the chose in action and the ratification is unanimous, the assignment does not unfairly deprive the corporation of its own cause of action or expose the alleged wrongdoer to multiple lawsuits. Lastly, the assignment does not threaten the autonomy of the corporation's officers in business judgments because the sole officer appropriates the asset in the first instance and that ratification is unanimously approved by the shareholders, thereby removing any taint of self-dealing.

[2] Because I believe that there was an effective assignment of the chose in action at the outset of this litigation, I do not have to reach the question whether SHL 95 later ratified Mr. Rawoof's actions. Although the majority concludes that the documents submitted by Mr. Rawoof in support of his ratification argument cannot be used "as a means of escaping the consequences of the denial of his motion to substitute plaintiffs," slip op. at

(continued...)

standing to bring this action in his own name from the outset of the litigation.[3]

## II

The other ground Mr. Rawoof asserts to establish his standing to bring this action is that, even if SHL 95 did not assign him its chose in action, as the agent of a partially

---

[2] (...continued)
16, the majority does not address definitively the authenticity of the underlying documents, nor the effectiveness of these documents in transferring ownership of SHL 95 stock to a living trust. Similarly, the district court did not address these issues directly when it granted Texor's motion for summary judgment. Were this matter remanded to the district court, I believe that the authenticity of the documents, and their bearing on the ownership of SHL 95 stock, would be appropriate issues for the district court to address.

[3] Although this result may appear at first inconsistent with our holding in *Carney v. General Motors Corp.*, 23 F.3d 1154, 1157 (7th Cir. 1994) (holding that the shareholder standing rule applies even when there is only one shareholder), such is not the case. *Carney* did not involve Illinois law. Moreover, the plaintiff in *Carney* did not argue that the action was brought following an implicit assignment of a chose in action, and we had no occasion to address the issue. Thus, although there may appear to be some superficial tension between our holding in *Carney* and the present case, such tension is simply that—superficial. We are not bound by prior jurisdictional rulings where the present issue was not raised or was passed sub silentio. *Cf. Hibbs v. Winn*, 542 U.S. 88, 126-27 (2004); *Fed. Election Comm'n v. NRA Political Victory Fund*, 513 U.S. 88, 97 (1994).

disclosed or undisclosed principal, he was a party to the franchise agreement, and thus he may assert this action in his own name. As noted above, Illinois recognizes the exception to the shareholder standing rule that permits a shareholder to assert a direct action when the alleged wrongful acts both injure the corporation and violate "a duty owed directly to the shareholder." *Mann*, 618 N.E.2d at 323. Such is the case when the duty owed to the shareholder arises from a contract to which the shareholder is a party. *Zokoych*, 344 N.E.2d at 813.

Under general principles of agency law, an agent acting on behalf of a partially disclosed or undisclosed principal is a party to the contract. *See* Restatement (Second) of Agency §§ 321-22 (1958). In either case, the agent becomes a promisee on the contract and may bring an action on the contract in his own name unless, in the case of an agent acting on behalf of a partially disclosed principal, the contract excludes the agent as a party. *Id.* § 364 & cmt. b. Illinois follows these general principals of agency law. *See Rosen v. DePorter-Butterworth Tours, Inc.*, 379 N.E.2d 407, 410 (Ill. App. Ct. 1978) ("[I]f an agent does not disclose the existence of an agency relationship and the identity of his principal, he binds himself to the third party . . . ."); *Lake Shore Mgmt. Co. v. Blum*, 235 N.E.2d 366, 368 (Ill. App. Ct. 1968) ("The agent of a partially disclosed principal is a party to the agreement and capable of bringing suit in his own right."). We have noted that, applying these principles, an agent may bring such an action as a real party in interest. *See American Nat'l Bank & Trust Co. of Chicago v. Weyerhaeuser Co.*, 692 F.2d 455, 464 n.19 (7th Cir. 1982).

In the present action, it is undisputed that Texor contracted to supply gasoline, *see* R.6, Ex. 2 at 1, but that it was not aware of SHL 95's identity until after this litiga-

tion commenced, *see* R.57 at 1. Although it is disputed now whether Texor knew that Mr. Rawoof was acting on behalf of an undisclosed, as opposed to a partially disclosed, principal, this fact is not material to whether Mr. Rawoof may assert an action in his own name to enforce the franchise agreement. Because the undisputed facts establish that Mr. Rawoof acted as the agent of either a partially disclosed or undisclosed principal, under Illinois law and general principles of agency law he is a party to the contract. Indeed, Texor itself benefitted from Mr. Rawoof's status as a party to the franchise agreement by bringing an action directly against him in state court for failing to pay for the March 2001 fuel deliveries. *See* R.6, Ex. 2.

Thus, Mr. Rawoof's status as a party to the franchise agreement exposes Mr. Rawoof "to a unique harm, different than general diminution of share price," *Massey*, 464 F.3d at 646, and entitles him to bring a direct action against Texor as a party to the contract. As such, Mr. Rawoof has standing under the shareholder standing rule to bring this action.


## Conclusion

Mr. Rawoof, both as an implicit assignee of the rights of SHL 95 and also as an agent of a partially disclosed principal, has suffered a direct injury as a result of Texor's alleged violation of the PMPA. He, therefore, does not fall within the general rule prohibiting shareholder standing. Therefore, I respectfully dissent and would remand the case to the district court for further proceedings on the merits of Mr. Rawoof's claims.